## In re KNICKERBOCKER STEAMBOAT CO.

(District Court, S. D. New York. April 7, 1905.)

1. WITNESSES—CONSTITUTIONAL PRIVILEGE—OBJECTION TO INTERROGATORY BY COUNSEL.

> The constitutional privilege of a witness not to be compelled to give evidence which may incriminate him is personal, and cannot be invoked by counsel as a ground of exception to interrogatories propounded in a pleading.
>
> [Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1058–1060.]

2. ADMIRALTY—INTERROGATORIES IN PLEADING.

> Interrogatories annexed to an answer in a proceeding for limitation of liability, which are directed solely to the discovery of assets of the petitioner, are immaterial to the issues, and subject to exception.

In Admiralty. Proceeding for limitation of liability. On exception to interrogatories in answer.

Martin A. Ryan, for petitioner.

Coleman & Coleman and A. Gordon Murray, for respondent.

ADAMS, District Judge. The libel here was filed by the Knickerbocker Steamboat Company, to contest and limit its liability as owner of the steamboat General Slocum. It is alleged that on the 15th of June, 1904, she was engaged in transporting a number of passengers from the foot of Third Street, East River, New York, to Locust Grove, New York, and while proceeding on the trip, about 10 o'clock in the forenoon, through Hell Gate, she was discovered to be on fire, said fire having originated in the forecastle from an unknown cause, and she was beached on the northerly end of Brothers Island. It is further alleged that a large loss of life occurred by reason of the premises and that many actions have in consequence been brought against the petitioner and more are feared, hence the petitioner desires to claim the benefit of Sections 4283, 4284 and 4285 of the Revised Statutes of the United States and the acts amendatory thereof and supplemental thereto [U. S. Comp. St. 1901, pp. 2943, 2944].

Louis Schiettinger, administrator of the estate of Dora Schiettinger and of Freda Schiettinger, deceased, appeared and answered the petition, denying many of the material allegations thereof and alleging that the Slocum was unseaworthy because she was not properly manned and equipped and did not have competent officers and crew. Further it is alleged that the boat was not manned and equipped as required by the laws of the United States particularly that she was not provided with water tight bulkheads, or with life boats, or boat disengaging apparatus, or with proper fire extinguishing equipment and a well drilled and efficient complement of men to operate the same in case of necessity; also that she was not provided with such number and character of good, efficient and available life preservers and with the life preservers required by law, and such other life saving apparatus as would best secure the safety of persons on board in case of fire, or other disaster, but on

the contrary, the fire extinguishing appliances on board were wholly improper and unsuitable, and the men to operate the same were wholly insufficient, incompetent and undrilled, and the number and character of good and available life preservers and other life saving appliances were wholly insufficient and not in accordance with law. It is further alleged that the boat, although carrying excursionists, had on board certain loose hay or straw, or other dangerous or inflammable material, contrary to statute, and that the officers, pilot and master were not properly certificated and licensed as required by law.

Annexed to the answer were a number of interrogatories, as follows:

"FIRST: State the names of the directors and officers of the Knickerbocker Steamboat Company on June 15th, 1904, and annex a copy of the by-laws of the Company and a list of the stockholders, with the amount of stock held by each stockholder on said June 15th, 1904.

SECOND: (a). What officers or directors had last been aboard the Steamboat 'General Slocum' prior to June 15th, 1904, and give the dates of such visit or visits.

If you shall say that no officer or director had so been aboard, state who last inspected the said steamboat, and if there was a report of such inspection in writing, annex a copy of your answer hereto.

(b). What were the rules and regulations promulgated by the Company for the guidance of the officers and crew of its vessel 'General Slocum' in force June 15th, 1904, and annex a copy hereto.

(c). Give the various dimensions and the ordinary details of the Steamboat 'General Slocum.'

THIRD: State the names of the master and all the pilots, mates, engineers and crew employed on board the 'General Slocum' June 15th, 1904, and what certificate, if any, had each.

FOURTH: State the total number of persons, including passengers and crew on board the 'General Slocum' at the time of her loss.

FIFTH: State the number, size and capacity of the life-boats and life-rafts carried by the 'General Slocum' on her last voyage and what apparatus was supplied for the lowering of the boats.

SIXTH: What fire extinguishing apparatus was the 'General Slocum' equipped with and how many feet of fire-hose did she have aboard and how long had it been aboard and how and where was it stowed when not in use?

SEVENTH: When last had there been a fire drill with the apparatus and hose on board; had all the men employed on board on June 15th, 1904, been engaged in the drill and if not all, which ones had been? State what such drill consisted of.

EIGHTH: When last had there been a boat-drill with the boats aboard and had all the men employed on board June 15th, 1904, been engaged in the drill, and if not all, which ones had been? State what such drill consisted of and whether the boats had been put overboard and into the water and disengaged from the davits.

NINTH: How many life preservers had the 'General Slocum' aboard; what were they made of; by whom made, and the date of their purchase and installation?

TENTH: What compensation did the Company receive for the use of the 'General Slocum' on June 15th, 1904? Was such compensation prepaid, and if pursuant to a written contract or charter, annex a copy.

ELEVENTH: Did the Company have any claim against any party or parties either at law or in admiralty arising out of maritime contract or tort for injury or otherwise, to the 'General Slocum' or for a salvage service performed by the 'General Slocum' or any claim whatever on account of said Steamboat? If there is such a claim, state what it is fully and whether suit is pending, and in what Court.

TWELFTH: What are the names of the other boats belonging to the petitioner and in what service are they engaged?

THIRTEENTH: What, if any, was the amount of insurance on the 'General Slocum'? What Company or Companies became liable therefor and have any of them paid the amounts due and is it still in the petitioner's possession; if not, what disposition has been made of the amount and to what persons and for what purpose?"

These have been excepted to by the petitioner as follows:

"The Knickerbocker Steamboat Company excepts to the interrogatories annexed to the answer of Louis Schiettinger administrator of the estate of Dora and Freda Schiettinger and refuses to answer the same for the following reasons:

FIRST: The petitioners decline to answer the First interrogatory because it is incompetent, irrelevant and immaterial; also because the respondent is not required by law or the rules of this Court or the Supreme Court of the United States to answer the same.

SECOND: The petitioners decline to answer the Second because (a) is indefinite, and immaterial; also because it calls for the production of a document not required to be produced by the petitioners; (b) is indefinite and immaterial; also might subject petitioners to a penalty or forfeiture or a crime; (c) indefinite, immaterial, and might subject petitioners to a penalty or forfeiture or a crime.

THIRD: The petitioners decline to answer interrogatories Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth on the grounds that they are incompetent, irrelevant and immaterial; also because petitioner is not compelled by law to answer the same; also because answering the same might subject, or tend to subject, petitioners to a penalty or forfeiture or a crime.

FOURTH: The petitioners decline to answer interrogatories Tenth, Eleventh, Twelfth and Thirteenth because they are incompetent, irrelevant and immaterial; also because petitioner is not required by law or the rules of this Court or the Supreme Court of the United States to answer the same."

1st. It is conceded that the names of the officers and directors of the company should be furnished but immateriality is urged as to the remainder of the interrogatory. The by-laws are apparently material because presumably they will define the officers' duties and in that way indicate the corporation's knowledge, which is a disputed issue in the action. I do not see what bearing a list of the stockholders can possibly have upon the determination of the issues involved here.

Exception overruled except as to the list of stockholders and their amounts of stock.

2d. It is urged in opposition to this interrogatory that it is indefinite as it does not ask if the officers or directors went on the steamer for the purpose of inspection, and if that is what is meant, the privilege of a party not to furnish possibly incriminating evidence against himself is resorted to. The interrogatory seems to be sufficiently definite and with reference to the latter objection, it might possibly be urged with effect if the privilege were relied upon by a party or a witness, but I do not see how it can where he has not objected. It is said in Abbott's Trial Evidence, pp. 783, 784:

"Where the privilege exists, it is personal to the witness. His counsel cannot be heard to object. * * * The witness has a right to advise with his counsel in the hearing of the court, but not privately, but must give his own answer without aid in writing or otherwise."

I acted upon this principle on the 30th of December, 1901—In re Emil Henschel [no written opinion]—where a referee in bankruptcy certified a question: "Whether so much of Section 7, sub. 'a' (9), Act July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425], is sufficient to grant a bankrupt that complete immunity * * * which is guaranteed to every person by the Fifth Amendment of the Constitution of the United States." It appeared that the privilege had been invoked by counsel only and for such reason the matter was sent back to the referee.

Exception overruled.

3rd, 4th, 5th. 6th, 7th, 8th and 9th: These exceptions are similar to No. 2, in so far as they assert the constitutional privilege. As it was only done here by counsel and not by the corporation itself or by any person who might be incriminated as an aider or abetter of the corporation—See United States v. Van Schaick (C. C.) 134 Fed. 592—the exceptions can not be considered.

Exceptions overruled.

10th, 11th, 12th and 13th: It would seem that these interrogatories are merely for the purpose of finding assets of the petitioner. As such they are inadmissible. It is well settled, for example, that vessel owners seeking limitation are not required to surrender insurance moneys. The City of Norwich, 118 U. S. 468, 6 Sup. Ct. 1150, 30 L. Ed. 134.

Admiralty Rule 32 provides that interrogatories may be propounded touching any matter charged in the libel or any matter of defence set up in the answer. These do not seem to fall within the rule.

Exceptions sustained.