MUSSELWHITE *v.* STATE.

In Banc. Nov. 12, 1951.

No. 38051 (54 So. (2d) 911)

Vernon H. Broom and Henry E. Pope, for appellant.

530

**Joe T. Patterson,** Assistant Attorney General, for appellee.

532

**Ethridge, C.**

Appellant, Luther Musselwhite, was convicted in the Circuit Court of Marion County of the murder of Virgil Price on August 13, 1950, and was sentenced to death.

Appellant first argues that he was entitled to a peremptory instruction in the trial court, and to a new trial

after the verdict had been rendered. We have examined carefully the entire record, and are of the opinion that there is no merit in these contentions. Without going into the detailed facts, the State's witnesses testified, and the jury was warranted in concluding that appellant committed a brutal assault and battery with his fists upon the deceased, Price; that appellant is a young man 31 years of age, and that Price was an elderly man 65 years of age; that the assault occurred in Breakfield's Camp, a night club located in Marion County; that appellant beat upon Price with his fists from time to time over a period of about an hour, and that during most of this period Price was wholly disabled from defending himself; that Price had made no assault upon appellant which would warrant the beating in self-defense and in fact was unable to defend himself; that appellant broke his right hand during the assault and that he was the only one who hit Price; and that Price died as a direct result of the brutal and unjustified assault and beating upon him by appellant. Appellant pleaded self-defense, and also claimed that another person beat upon Price, but the jury was amply justified in not accepting his version and in accepting that of several eyewitnesses who testified for the State.

Nor is there any merit in appellant's argument that the trial court erred in overruling his motion for a change of venue. █ The State introduced eighteen witnesses on the motion, all of whom testified that in their opinions appellant could get a fair and impartial trial in Marion County. These witnesses seem to be a fair cross-section of the community. Defendant offered in support of his motion eight witnesses, only two of whom testified unqualifiedly that they did not think appellant could receive a fair trial in that county. There was ample basis for the trial judge overruling the motion for change of venue. Action upon such a motion is largely in the discretion of the trial court, unless it clearly appears that it abused that discretion, and that element does not

exist here. Shimniok v. State, 1944, 197 Miss. 179, 19 So. (2d) 760.

Appellant also assigns as error the admission of evidence of certain occurrences that happened immediately outside of the building in which Price was killed. This point has particular reference to the evidence that appellant attacked and had a fight with Bob and Harlan Alford outside of the building. However, this fight occurred in the middle of the beating of Price by appellant. While in the process of beating Price, appellant knocked him through the back door, after which appellant went outside. After the scuffle with Bob Alford, appellant and Turnage, who the evidence indicated was an accessory and accomplice of appellant, went back in the building. Turnage then used appellant's gun to hold off other people in the building while appellant again assaulted Price. All of these facts were closely connected with the crime in question, shed light upon appellant's intent and motive, and formed a part of the chain of facts so intimately connected that the whole was relevant in order that the jury might interpret the entire transaction and determine appellant's guilt or innocence. See Stone v. State, 1950, 210 Miss. 218, 49 So. (2d) 263; Collier v. State, 1913, 106 Miss. 613, 64 So. 373. Moreover, the defendant himself testified to the occurrences outside of the building, both on direct examination by his own attorneys and without objection on cross-examination, so appellant is in no position to complain thereof.

Nor was there any reversible error in the comments made by the trial judge during the progress of the trial. Two of them may have been improperly phrased, but all of them constituted valid restrictions which the trial judge had the power to impose in order to prevent the record from becoming burdened with immaterial testimony and improper leading questions. The entire record reflects that the learned trial judge

was fair and impartial, and that the appellant received a fair and impartial trial.

After the State had closed its case, defendant offered as a witness Luther Turnage, who at that time was also under a separate indictment for the same crime. Turnage was sworn in, asked a few preliminary questions, and defendant's attorney then told him to "go ahead and tell these twelve gentlemen what happened on that occasion" at Breakfield's Camp. The State's evidence had indicated that Turnage had come to the camp with appellant, and had assisted appellant in the beating of Price by holding appellant's gun on other persons in the building and ordering them to stay there, not to interfere, and not to call the police. After Turnage was asked to tell what happened on the night in question, one of defendant's attorneys stated that Mr. Claude Conner represented the witness, and asked the court to have the sheriff call him and request him to come down. Appellant's attorney stated that he wanted to keep the witness from saying anything that might incriminate him or violate the witness's constitutional rights. After a conference between Conner and the attorneys for the State and appellant, Conner dictated into the record an objection to Turnage being questioned about anything he might have done or said on the occasion "for the reason that such testimony, in the opinion of the attorney and of the witness, might incriminate the witness." The witness's attorney stated that he had no objection to Turnage testifying about anything that he might have seen or heard on the occasion, but objected to him testifying about anything the witness might have done or said. The court then ruled that "he does not have to testify, that he has the right to claim his immunity, and the Court now offers him that right and states to him, and to all of the attorneys, that the Court understands the rule to be that if he testifies to any fact whatsoever in connection with the occurrence, he will then be right-

fully subjected to cross-examination by the Attorney for the opposite side as to any and everything that occurred there. \* \* \* Therefore, let Mr. Turnage and the Attorneys understand and know that Mr. Turnage is at liberty to leave the witness stand and refuse to testify.

"By Mr. Conner:

"In view of the ruling of the Court as Attorney for Mr. Luther Turnage I claim for him immunity from testifying in this case on anything that might incriminate him.

"\* \* \* So that, the witness can testify or he can refuse to testify, he being under no compulsion whatsoever to testify, and he may withdraw from the witness stand, or he may testify.

"By Mr. Conner:

"In view of the ruling of the Court the witness now withdraws himself from the witness stand and will not testify.

"By the Court:

"The witness choosing not to testify has a perfect right so to do, and that right is respected by this Court

"Witness Luther Turnage Withdrawn from Stand."

Appellant's attorneys excepted to this ruling, on the ground that Turnage should be able to testify on matters that do not incriminate him, but would still be immune from testifying on any matters that would incriminate him. Turnage was the only witness other than appellant who was offered by appellant as to the facts.

Appellant now says that this action of the trial court was error; that the witness's privilege is a personal one, which may be waived by him and must be claimed by the witness himself; and that here the witness said nothing and did not personally claim his privilege. Appellant relies on Brown v. State, 1914, 108 Miss. 46, 66 So. 288. There appellant, West Brown, had been jointly indicted with his brother, Alf Brown, for murder. A severance was granted and West Brown was tried and

convicted of manslaughter. During the trial Alf Brown was called as a witness for defendant. He was not sworn as a witness. The witness's attorneys objected to Alf testifying as to any matters concerning the offense in question because it might tend to prove his connection with the crime and incriminate him. The trial court sustained that objection. The witness said nothing. On appeal the conviction was reversed. ██ █ The privilege was said to be personal to the witness and subject to claim by him alone. The Court said:

"It was the duty of the court to have informed the witness of his privilege, and to have left it to the witness alone to waive or claim this protection afforded him by the Constitution. So far as the witness is concerned, there is nothing in the record to suggest that he was unwilling to testify. His lawyers were unwilling, but the witness himself said not a word. He was not even sworn as a witness. The defendant was denied the benefit of his codefendant's evidence, although, so far as the record discloses, the witness was perfectly willing to testify.

"It is our opinion that the attorneys, as officers of the court, might properly ask the court to apprise the witness of his rights; but certainly they have no right to object to his testifying, if he desires to do so. The court cannot assume that the witness is unwilling to give evidence, unless the witness so states."

In Jackson v. State, 1935, 173 Miss. 776, 163 So. 381, 100 A. L. R. 789, and in Hutchins v. State, Miss. 1951, 54 So. (2d) 210, 212, witnesses under indictment for the same offenses and called by the defendants claimed the privilege personally and in their own words. In the Hutchins case, Brown v. State was referred to and it was said "That case was reversed on appeal because there was nothing in the record to indicate that the codefendant was unwilling to testify."

In the instant case, it is manifest that the witness understood and personally claimed his privilege against

self-incrimination, and that the trial court so found. The test under the Brown rule is whether it appears in fact that the witness has personally claimed his privilege. In that case the witness was not sworn, was not asked any questions, the court made no explanation to him of his privilege; his attorneys simply objected. Of course, the better procedure in every instance would be to have the witness personally answer an inquiry from the court as to whether he claims his privilege. But the rule in the Brown case means that it must appear as a fact that the witness personally claims the privilege. Here we think that fact exists. The trial judge, at some length and in some detail, explained to the witness and to the attorneys his conception of the privilege. He was told that he could refuse to testify or he could testify. After the explanation by the trial judge, and the lengthy colloquy of the attorneys, the witness, who obviously had heard the trial court's explanation of his rights, by his action claimed his privilege and withdrew from the witness stand. We think that these circumstances comply with the rule in the Brown case and constituted a factual, personal claim of privilege by the witness. See 58 Am. Jur., Witnesses, Sec. 48; 8 Wigmore, Evidence, Sec. 2270; Annotation, 75 Am. St. Rep. 340.

Although our decision is placed on the above basis, it is also relevant to note that appellant made no objection to the court's action on the ground that the witness must claim the privilege personally, nor did he give that reason in his motion for a new trial. Appellant thus afforded the trial judge no opportunity to pass on that proposition. ██ ██ Appellant's objection was for another and erroneous reason, that the witness should be permitted to testify as to nonincriminating facts in the transaction. Yet where a witness in his direct examination voluntarily opens an account of a transaction, he will, on his cross-examination, be compelled to complete the narrative notwithstanding his claim of privilege

from testifying. He will not be allowed to state some facts as to a transaction and afterwards refuse to give the details as to related facts. 58 Am. Jur., Witnesses, Secs. 94-95; 8 Wigmore, Evidence, Sec. 2276. The opposite rule would permit a witness to give a biased and one-sided version of a transaction.

Appellant argues that an instruction granted the State authorizing the jury to find from the evidence that appellant murdered Price "whether with or without the aid, assistance, and encouragement of one Luther Turnage" was erroneous, but manifestly the jury was warranted under this record in finding that appellant committed murder under either circumstance. The instruction granted appellant, to the effect that the jury must find that appellant killed Price while acting in combination or conjunction with Turnage, was improper, but was granted at the request of appellant, who cannot complain of it. Moreover, appellant cannot complain because the instruction which he obtained placed an additional burden upon the State and was more favorable to the appellant than it should have been. Haney v. State, 1946, 199 Miss. 568, 24 So. (2d) 778. We have also examined appellant's other assignments of error, but we find that they have no merit.

For these reasons the judgment of conviction is affirmed, and the date for execution of the sentence is set for Friday, December 21, 1951.

Affirmed, and Date for Execution of the Sentence Set for Friday, December 21, 1951.

PER CURIAM.

The above opinion is adopted as the opinion of the Court and for the reasons therein indicated, the judgment of the court below is affirmed and Friday, December 21, 1951 is the date set for execution of the sentence.

**Hall, J.**, took no part in decision of this case.