[No. 37212.   Department Two.   July 30, 1964.]

THE STATE OF WASHINGTON, *on the Relation of Leo M. Sowers, Respondent,* v. DAVID H. OLWELL, *Appellant.*[*]

*Robert W. Fetty,* for appellant.

*Charles O. Carroll* and *James E. Kennedy,* for respondent.

DONWORTH, J.—May an attorney refuse to produce, at a coroner's inquest, material evidence of a crime by asserting

[*]Reported in 394 P. (2d) 681.

the attorney-client privilege or by claiming the privilege against self-incrimination on behalf of his client? These are the issues raised in this appeal.

September 18, 1962, a coroner's inquest was held for the purpose of investigating the circumstances surrounding the death of John W. Warren. Several days prior to the date of the inquest, appellant was served with a subpoena duces tecum, which said, in part:

". . . bring with you all knives in your possession and under your control relating to Henry LeRoy Gray, Gloria Pugh or John W. Warren."

Thereafter, at the coroner's inquest the following exchange took place between a deputy prosecutor and appellant:

" . . .

"Q. Now, Mr. Olwell, did you comply with that? [Subpoena]

"A. I do not have any knives in my possession that belong to Gloria Pugh, or to John W. Warren, and I did not comply with it as to the question of whether or not I have a knife belonging to Henry LeRoy Gray.

"Q. Now, I would ask you, do you have a knife in your possession or under your control relating to or belonging to Henry LeRoy Gray?

"A. I decline to answer that because of the confidential relationship of attorney and client; and to answer the question would be a violation of my oath as an attorney.

" . . .

"Q. And for the record, Mr. Olwell, in the event you do have in your possession a knife or knives that would be called for under the subpoena duces tecum, I take it your answer would be that you received these at the time you were acting as the attorney for Mr. Gray, is that correct?

"A. That is correct."

Further, on examination by the coroner, the following occurred:

"Mr. Sowers: . . . As the Coroner of King County I order you to do so [answer] under the provisions of the law set forth in the legislature under R.C.W. 36.24.050.

"Mr. Olwell: I decline to surrender any of my client's possessions, if any, because of the confidential relationship of attorney and client because under the law I cannot give

evidence which under the law cannot be compelled from my client himself."

The events preceding the issuance of the subpoena and the coroner's inquest (as shown by the record as supplemented by some undisputed statements in the parties' briefs) are substantially as follows: Henry LeRoy Gray and John W. Warren engaged in a fight on September 7, 1962, which resulted in Warren's being mortally injured by knife wounds. On or about September 8, 1962, Gray was taken into custody by the Seattle Police Department and placed in jail. During his incarceration, Gray admitted the stabbing of Warren and was willing to cooperate and to aid in the investigation of the homicide. According to a detective of the police department, Gray was not sure what became of the knife he had used in the fight with Warren.

September 10, 1962, David H. Olwell, appellant, was retained as attorney for Gray, who was still confined in jail. Mr. Olwell conferred with his client and then, between the time of that conference and the issuance of the subpoena duces tecum, he came into possession of certain evidence (a knife). It is not clear whether appellant came into possession of this knife through his own investigation while acting as attorney for Gray or whether possession of it was obtained as a result of some communication made by Gray to Olwell during the existence of their attorney and client relationship. This factor is important in determining whether the evidence could be considered as a privileged communication (which is discussed below).

Therefore, at the time of the inquest, appellant was in possession of a knife that, at that time, was considered as a possible murder weapon.[1] Thereafter, the coroner issued the subpoena duces tecum previously quoted.

Appellant appeared at the coroner's inquest and the exchange between appellant, the deputy prosecutor, and the

[1] It is stated in respondent's brief that, on April 25, 1963, Henry LeRoy Gray was tried and convicted of murder and is now serving a life sentence for the crime. Furthermore, a knife other than the one involved in this proceeding was subsequently discovered to be the weapon used by Gray in the fight.

·coroner took place as described above. At that time, appellant refused to comply with the subpoena duces tecum and raised the issues presented in this appeal. Thereafter, appellant was cited to appear in the Superior Court of King County, where he was found to be in contempt because of his actions at the coroner's inquest on September 18, 1962. Appellant was given 10 days within which to purge himself of contempt, and, upon his failure to do so, an order was entered adjudging him to be in contempt and directing that he serve two days in the county jail. From that order finding him in contempt, Mr. Olwell appeals.

The attorney-client privilege is codified in RCW 5.60-.060, which provides, in part:

"The following persons shall not be examined as witnesses:

" . . .

" (2) An attorney or counselor shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advise given thereon in the course of professional employment. . . . "

To be protected as a privileged communication, information or objects acquired by an attorney must have been communicated or delivered to him by the client, and not merely obtained by the attorney while acting in that capacity for the client. *Dupree v. Better Way, Inc.*, 86 So. (2d) 425 (Fla. 1956). See, also, 97 C.J.S., Witnesses § 283. This means that the securing of the knife in this case must have been the direct result of information given to Mr. Olwell by his client at the time they conferred in order to come within the attorney-client privilege. Although there is no evidence relating thereto, we think it reasonable to infer from the record that appellant did, in fact, obtain the evidence as the result of information received from his client during their conference. Therefore, for the purposes of this opinion and the questions to be answered, we assume that the evidence in appellant's possession was obtained through a confidential communication from his

client.[2] If the knife were obtained from a third person with whom there was no attorney-client relationship, the communication would not be privileged, and the third person could be questioned concerning the transaction.[3] See 58 Am. Jur., Witnesses § 492.

Further, communications concerning an alleged crime or fraud, which are made by a client to the attorney after the crime or the fraudulent transaction has been completed, are within the attorney-client privilege, as long as the relationship of attorney and client has been established. *State v. Dawson*, 90 Mo. 149, 1 S. W. 827 (1886); *Atlanta Coca-Cola Bottling Co. v. Goss*, 50 Ga. App. 637, 179 S. E. 420 (1935). See also, 58 Am. Jur. Witnesses § 516; 97 C.J.S., Witnesses § 285. Therefore, we find nothing significant in the fact that the communication was made after and concerned the events of a homicide.[4]

In the present case we do not have a situation that readily lends itself to the application of one of the general rules applicable to the attorney-client privilege. Here, we enter a balancing process which requires us to weigh that privilege (which is based on statute and common law), and, as discussed later herein, the privilege against self-incrimination (which is constitutional), against the public's interest in the criminal investigation process. Generally speaking, the public interest at times must yield to protect the individual. *State v. Kociolek*, 23 N. J. 400, 129 A. (2d) 417, 425 (1956). Also, we must not lose sight of the policy behind the attorney-client privilege, which is to afford the client freedom from fear of compulsory disclosure after consulting his legal adviser.

---

[2] It appears from the briefs that certain material facts discussed therein were never considered in the trial court or in the coroner's inquest and are not in the record on appeal. Therefore, we must consider only the issues and facts presented by the record and those facts mutually conceded by the parties.

[3] The state suggests that the knife was obtained from Gray's ex-wife, but it failed to offer any proof of this alleged fact to show that a privileged communication did not, in fact, exist.

[4] See *State v. Cory*, 62 Wn. (2d) 371, 382 P. (2d) 1019 (1963) on the question of the right of a client to confer privately with his attorney.

■   We must remember, also, that the attorney-client privilege is not absolute, for it can be waived by the client. *State v. Sullivan*, 60 Wn. (2d) 214, 217, 373 P. (2d) 474 (1962); RCW 5.60.060. See cases cited in 51 A.L.R. (2d) 521 (1951).

On the basis of the attorney-client privilege, the subpoena duces tecum issued by the coroner is defective on its face because it requires the attorney to give testimony concerning information received by him from his client in the course of their conferences. The subpoena names the client and requires his attorney to produce, in an open hearing, physical evidence allegedly received from the client. This is tantamount to requiring the attorney to testify against the client without the latter's consent. RCW 36.24.080 makes testifying in a coroner's inquest similar to testifying in a superior court, and, therefore, the attorney-client privilege should be equally applicable to witnesses at a coroner's inquest. We, therefore, hold that appellant's refusal to testify at the inquest for the first reason stated by him was not contemptuous.

■   We do not, however, by so holding, mean to imply that evidence can be permanently withheld by the attorney under the claim of the attorney-client privilege. Here, we must consider the balancing process between the attorney-client privilege and the public interest in criminal investigation. We are in agreement that the attorney-client privilege is applicable to the knife held by appellant, but do not agree that the privilege warrants the attorney, as an officer of the court, from withholding it after being properly requested to produce the same. The attorney should not be a depository for criminal evidence (such as a knife, other weapons, stolen property, etc.), which in itself has little, if any, material value for the purposes of aiding counsel in the preparation of the defense of his client's case. Such evidence given the attorney during legal consultation for information purposes and used by the attorney in preparing the defense of his client's case, whether or not the case ever goes to trial, could clearly

be withheld for a reasonable period of time. It follows that the attorney, after a reasonable period, should, as an officer of the court, on his own motion turn the same over to the prosecution.

We think the attorney-client privilege should and can be preserved even though the attorney surrenders the evidence he has in his possession. The prosecution, upon receipt of such evidence from an attorney, where charge against the attorney's client is contemplated (presently or in the future), should be well aware of the existence of the attorney-client privilege. Therefore, the state, when attempting to introduce such evidence at the trial, should take extreme precautions to make certain that the source of the evidence is not disclosed in the presence of the jury and prejudicial error is not committed.[5] By thus allowing the prosecution to recover such evidence, the public interest is served, and by refusing the prosecution an opportunity to disclose the source of the evidence, the client's privilege is preserved and a balance is reached between these conflicting interests. The burden of introducing such evidence at a trial would continue to be upon the prosecution.

The other question raised by appellant is the claim that he could assert the privilege against self-incrimination on behalf of his client, and therefore could also refuse to answer the subpoena duces tecum for that reason. This is the result reached in *United States v. Judson*, 322 F. (2d) 460 (C.A. 9th), relied upon by appellant. The holding in that case was that, if the client could raise the privilege himself, his attorney could claim it for him. The court placed emphasis on the fact that the evidence there was for the defense of an income-tax investigation and that an attorney must rely heavily on evidence obtained from his client.

---

[5] See State v. Vindhurst, 63 Wn. (2d) 607, 388 P. (2d) 552 (1964), where the defendant's former counsel was asked a question concerning the production of narcotics, a privileged communication. The question there was only whether or not the asking of the question alone was prejudicial error.

A search of the authorities reveals to us that the question does not have a standard answer. Traditionally, the privilege is said to be personal and must be claimed by the witness or party.[6] In 8 Wigmore, Evidence (McNaughton rev. 1961) § 2270, p. 416, the following is observed:

" . . . May the witness—party or non-party—make the claim through his *counsel?* The rule is that the privilege must be claimed personally; however, the courts, especially when the witness is a party or when the situation otherwise demands, frequently permit counsel for the witness to call the witness' attention to the privilege or to plead it in his behalf. . . ."[7]

Later, in 8 Wigmore, Evidence (McNaughton rev. 1961) § 2307, p. 592, the following is stated:

" . . .

"It follows, then, that *when the client himself would be privileged* from production of the document, either as a party at common law or as a third person claiming title or as exempt from self-incrimination, the attorney having possession of the document is not bound to produce. Such has invariably been the ruling. On the other hand, if the *client would be compellable* to produce, either by motion or by subpoena or by bill of discovery, then the attorney is equally compellable, if the document is in his custody, to produce under the appropriate procedure. . . ."

This quotation is cited in *United States v. Judson, supra,* p. 467, and relied upon in reaching the result that the privilege can be asserted by the attorney as applied to cancelled checks and bank statements which did not come within the attorney-client privilege.

[6]*United States v. White,* 322 U. S. 694, 88 L. Ed. 1542, 64 S. Ct. 1248, 152 A.L.R. 1202 (1944); *Hale v. Henkel,* 201 U. S. 43, 50 L. Ed. 652, 26 S. Ct. 370 (1906); *State v. Britton,* 27 Wn. (2d) 336, 178 P. (2d) 341 (1947). See, also, the dissent in *United States v. Judson, supra,* at p. 468.

[7]Cited in support of the statement are *State v. Brown,* 221 La. 394, 59 So. (2d) 431 (1952), which held that the attorney was not entitled to invoke the privilege on behalf of the client; *In re Leiby's Estate,* 60 Ohio L. Abs. 243, 101 N. E. (2d) 214, 217 (1950); *Musselwhite v. State,* 212 Miss. 526, 54 So. (2d) 911 (1951); *State v. Mohr,* 99 N.J.L. 124, 122 Atl. 837 (1923), an attorney may advise his client when to assert the privilege; *State v. Kent,* 5 N. D. 516, 67 N. W. 1052 (1896).

We find numerous cases which support the position that the privilege against self-incrimination is personal and cannot be asserted by counsel.[8]

■ One might conclude that a personal privilege of the client could be asserted by his attorney. This does not take into consideration the different principles on which the two privileges are based: (1) The attorney-client privilege is to insure free consultation by the client with the attorney, and (2) the privilege against self-incrimination is to keep the individual free from intimidation. The client, in his relations with the attorney, is protected from compulsory disclosure by his attorney as to communications which come within the attorney-client privilege. The evidence in the present case would be protected for a reasonable period of time if it is of value to counsel in the preparation of the defense of the client's case. There is no reason to extend the privilege against self-incrimination to the attorney because the client is already protected in his relations with his attorney by the attorney-client privilege.

As was previously stated, the attorney should not be a depository for the suppression of such criminal evidence. If the attorney is given such evidence by his client, he should not be able to assert the privilege against self-incrimination which is personal to the client and must be claimed by the client alone. The attorney can aid in its preservation by informing the client of his right to claim the privilege against self-incrimination.

Because the subpoena duces tecum in this case is invalid, since it required the attorney to testify without the client's consent regarding matters arising out of the attorney-client

---

[8]*Ziegler v. United States*, 174 F. (2d) 439 (C.A. 9th, 1949); *United States v. Johnson*, 76 F. Supp. 538, 540 (M.D. Pa., 1947); *McAlister v. Henkel*, 201 U. S. 90, 50 L. Ed. 671, 26 S. Ct. 385 (1906); *London v. Everett H. Dunbar Corp.*, 179 Fed. 506 (C.C.A. 1st, 1910); *In re Knickerbocker Steamboat Co.*, 136 Fed. 956 (S.D.N.Y., 1905). See, also, *United States v. Willis*, 145 F. Supp. 365 (D.C.M.D. Ga., 1955). The cases holding contrary to this position are *United States v. Judson*, *supra*; *Application of House*, 144 F. Supp. 95 (N.D. Cal., 1956); and *Brody v. United States*, 243 F. (2d) 378, 387 (C.A. 1st, 1957).

relationship, the order of the trial court finding appellant to be in contempt and punishing him therefor is hereby reversed with directions to dismiss this proceeding.

· OTT, C. J., HAMILTON, J., and LANGENBACH, J. Pro Tem., concur.

FINLEY, J., concurs in the result.