372 So.2d 254 (1979)
Eugene BUFORD, Jr.
v.
STATE of Mississippi.
No. 51025.
Supreme Court of Mississippi.
March 28, 1979.
Rehearing Denied July 11, 1979.
*255 Roy Pitts, Meridian, for appellant.
A.F. Summer, Atty. Gen. by Wayne Snuggs, Special Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, WALKER and LEE, JJ.
ROBERTSON, Presiding Justice, for the Court:
Eugene Buford, Jr. was indicted, tried and convicted in the Circuit Court of Lauderdale County, Mississippi, of the murder of John T. Handcock, Jr. He was sentenced to life imprisonment in the Mississippi State Penitentiary.
On the night of September 12, 1975, at the Naval Air Station near Meridian, Mississippi, Buford, Christian Sandifer, Jr., and Handcock were drinking in Buford's room. Buford and Handcock were playing checkers and got into an argument. Handcock hit Buford in the mouth with his fist, knocking him down and knocking his glasses off. Handcock walked back to his room and Buford checked his bleeding mouth in a mirror.
A few minutes later as they met in the hallway to go to town Handcock apologized to Buford for hitting him. They proceeded to Sandifer's car, which was parked outside the entrance gate to the Naval Air Station. According to Sandifer, Buford suggested that Handcock sit on the passenger side of the front seat, and Buford got on the back seat behind Handcock. As they drove toward Meridian, Buford leaned over the front seat in front of Handcock.
Immediately thereafter Handcock told Sandifer to take him to the hospital, that Buford had stabbed him. Sandifer turned on the overhead light and saw that Handcock was bleeding profusely from his chest. He also saw Buford with a knife in his hand. Buford, holding a knife to Sandifer's throat, ordered him to stop the car, whereupon Buford leaned across the front seat and unlatched the door on Handcock's side and Handcock fell out of the car. Buford then ordered Sandifer to drive on to Meridian and on the way, according to Sandifer, Buford threw the knife out of the car window.
Sandifer drove to the cab station to meet his girl friend, and Buford then took Sandifer's car to wash the blood out of the front seat. While his girl friend was calling the police, Sandifer went outside and waved down a patrolling police car. He told them what had happened and they took him to the police station.
Meridian Police Officer Cecil Currie received a police bulletin over his car radio to be on the lookout for a 1969 black-over-orange Camaro with large black racing stripes down the center of the hood and trunk. Shortly thereafter Currie spotted this car and followed it about a block and a half, stopping it on 22nd Avenue. The driver said his name was Buford, and Currie shined his flashlight into the car and saw what appeared to be blood on the passenger side of the front seat.
Officer McAllister, who was with Currie, looked inside the car and also noticed the bloodstains. Buford was then arrested, searched and handcuffed. Officer Currie asked Buford if he wanted to say anything, and Buford replied that he didn't know what it was about. Officer Currie then said:
"[W]e told him it was concerning an incident  a stabbing incident  out in Marion, and he told us that he didn't know anything about it."
Handcock's body was found a short time later by Deputy Sheriff Garcia of Lauderdale County. After concluding that Handcock was dead from a single stab wound in his chest, Garcia and the assistant coroner put Handcock's body in an ambulance and it was taken direct to a funeral home.
Buford took the witness stand in his own defense and testified that soon after they left the Naval Air Station they noticed a car on the left side of the road with flashing lights, that they stopped and Handcock went back to the car to check, that Handcock did not come back and when the parked car started up and sped away, he and Sandifer looked for Handcock and found him lying behind their car with a stab wound in his chest. Buford further testified that he and Sandifer loaded Handcock into Sandifer's car and as they proceeded toward Meridian, Sandifer suggested that they get rid of Handcock's body *256 because if his body was found in the car both would be charged with killing him, whereupon they dumped his body on the side of the road. Buford said that they agreed to meet at the police station after he had dropped Sandifer off at the cab station to meet his girl friend and after Buford had washed the blood out of the car.
Buford has assigned as error that:
I. The Trial Court erred in failing to require a suppression hearing to determine the existence, if any, of probable cause to arrest the Appellant wherein the admissibility of evidence obtained during such arrest would have been determined.
II. The Trial Court erred in permitting the police officer to testify as to his accusation of Appellant and his subsequent denial insofar as the same is inadmissible evidence.
III. The Trial Court erred in instructing the jury that they could measure the weight and credibility of any witness's testimony by his interest in the case.
IV. The Trial Court erred in permitting the case to go to the jury by reason of the incompetence of trial counsel and thereby failed to guarantee Appellant a fair trial.
No suppression hearing was requested by the appellant. It was not until an official police broadcast, based on specific information furnished the Meridian police by eye-witness Christian Sandifer, was received by Officer Currie that he stopped the car driven by appellant, and it was not until he and Officer McAllister had noticed blood on the passenger side of the front seat that Buford was arrested, explained his Miranda rights and questioned. There was probable cause for Buford's arrest. In the absence of a request for a suppression hearing, the trial court was not in error in failing to have such a hearing.
No objection was made when Officer Currie testified:
"[W]e told him it was concerning an incident  a stabbing incident  out in Marion, and he told us that he didn't know anything about it."
We have said many times that, in the absence of a specific objection to testimony, the trial court cannot be put in error for admitting it. See Baker v. State, 327 So.2d 288 (Miss. 1976); and Sumner v. State, 316 So.2d 926 (Miss. 1975).
Appellant assigns as error the granting of Instruction D-14:
"The court instructs the jury that they are the sole judges of the credibility of the witnesses and the weight and worth of their testimony. The jury may take into consideration the interest, if any, any witness, or witnesses, may have in the case; his relationship or connection with the parties to this case; his or their demeanor on the stand. The jury may also take into consideration in judging the credibility of any witness or witnesses and giving weight to their testimony their opportunity for knowing and seeing the facts and conditions about which they testify."
This instruction was requested by the defendant, not by the State. We specifically held in Musselwhite v. State, 212 Miss. 526, 54 So.2d 911 (1951), that an accused may not complain of an instruction given at his request. The logic of requesting this instruction by the defendant was that defendant wanted the jury to look with a jaundiced eye at the testimony of the State's principal witness, Christian Sandifer, Jr., and consider the interest of this witness in clearing his name and placing the commission of the crime on the defendant, who was his companion and fellow passenger in the car with the victim.
As a part of his trial strategy, defendant requested and was granted Instruction D-13:
"The court instructs the jury that a defendant is a competent witness in his own behalf and that you have no right to discard his testimony, or to look upon his testimony with suspicion merely because he is a defendant in this cause, and that if you have no other reason to disbelieve him than the fact that he is a defendant, then you must believe his testimony to be the truth, and thereupon acquit the defendant."
The trial court cannot be placed in error for granting these two instructions specifically requested by the defendant.
The last assignment of error is that trial counsel (now deceased) was incompetent and ineffective. We have carefully studied the record and are of the opinion that this assignment of error is without merit and that the defendant did have the *257 assistance of effective and competent counsel at his trial.
For these reasons, the conviction and sentence are affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.