[No. 6736-1.   Division One.   September 24, 1979.]

FRANCES M. HAWKINS, ET AL, *Appellants,* v. KING COUNTY, ET AL, *Defendants,* RICHARD SANDERS, ET AL, *Respondents.*

*Davies, Pearson, Anderson, Seinfeld, Gadbow, Hayes & Johnson, P.S.*, and *Larry E. Levy*, for appellants.

*Bogle & Gates* and *Kelly P. Corr*, for respondents.

SWANSON, A.C.J.—Michael Hawkins, acting through his guardian ad litem, and his mother Frances M. Hawkins, appeal from a summary judgment dismissing attorney Richard Sanders from an action sounding in tort. Appellants contend Sanders, court appointed defense attorney for Michael Hawkins, was negligent and committed malpractice by failing to divulge information regarding his client's mental state at a bail hearing. We find no error and affirm.

On July 1, 1975, Michael Hawkins was booked for possession of marijuana. Following his court appointment as Hawkins' defense counsel on July 3, 1975, Richard Sanders

conferred with Hawkins for about 45 minutes, at which time Hawkins expressed the desire to be released from jail.

Also on July 3, 1975, Sanders talked with Palmer Smith, an attorney employed by Hawkins' mother Frances Hawkins, to assist in having Hawkins either hospitalized or civilly committed. Smith told Sanders then, and reiterated by letter, that Hawkins was mentally ill and dangerous. On July 8, 1975, Dr. Elwood Jones, a psychiatrist, telephoned and wrote Sanders and averred Hawkins was mentally ill and of danger to himself and others and should not be released from custody. Sanders represented that he intended to comply with his client's request for freedom.

On July 9, 1975, a district judge released Hawkins on a personal surety bond. At the bail hearing, Sanders did not volunteer any information regarding Hawkins' alleged illness or dangerousness, nor were any questions in that vein directed to him either by the judge or the prosecutor. Smith, Jones, and Mrs. Hawkins were informed of Hawkins' release, and all parties later met on two occasions in a counseling environment.

On July 17, 1975, about 8 days after his release, Michael Hawkins assaulted his mother and attempted suicide by jumping off a bridge, causing injuries resulting in the amputation of both legs. The Hawkinses commenced an action for damages against King County, the State of Washington, Community Psychiatric Clinic, Inc., and one of its employees on August 16, 1976, and amended the suit on November 30, 1977, to name Sanders a party defendant. Sanders filed a motion to dismiss for failure to state a claim. On June 16, 1978, the trial court granted Sanders' motion. Subsequently the trial court signed an amended order dated July 29, 1978, which described the earlier order of dismissal to be a summary judgment and permitted appellants Hawkins an interlocutory appeal.

On appeal, the Hawkinses essentially present two arguments: First, that by his failure at the bail hearing to disclose the information he possessed regarding Michael Hawkins' mental state, defense counsel Sanders subjected

himself to liability for malpractice, as court rules and the Code of Professional Responsibility mandate such disclosure on ethical and legal grounds. Second, that by the same omission Sanders negligently violated a common–law duty to warn foreseeable victims of an individual he knew to be potentially dangerous to himself and others. *See Tarasoff v. Regents of Univ. of Cal.,* 17 Cal. 3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 (1976).

Sanders asserts the Hawkinses have failed to demonstrate that he breached any duty owed to them and, as an attorney appointed by the court to represent an indigent defendant, that he was a quasi–judicial officer, immune from civil liability.

■■ We defined the elements of a legal malpractice action in *Hansen v. Wightman,* 14 Wn. App. 78, 88, 538 P.2d 1238 (1975), as

> the existence of an attorney–client relationship, *the existence of a duty on the part of a lawyer,* failure to perform the duty, and the negligence of the lawyer must have been a proximate cause of damage to the client.

(Footnote and citations omitted. Italics ours.) The court, in *Cook, Flanagan & Berst v. Clausing,* 73 Wn.2d 393, 395, 438 P.2d 865 (1968), defined the standard of care for Washington lawyers:

> [T]he correct standard to which the plaintiff is held in the performance of his professional services is that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction.

We further note that the Code of Professional Responsibility sets standards of ethics for all members of the bar of this state. RCW 2.48.230, *In re Chantry,* 67 Wn.2d 190, 407 P.2d 160 (1965).

In considering appellants' argument that Hawkins' defense counsel breached an ethical and legal duty to disclose information to the court, we observe that a lawyer is ethically bound to advocate zealously his client's interests

to the fullest extent permitted by law and the disciplinary rules. (CPR) DR 7–101(A)(1).[1]

Appellants argue that the information Sanders received was particularly relevant to the issues the bail hearing judge is required to resolve on pretrial release pursuant to CrR 3.2.[2] In support of this contention, appellants cite (CPR) DR 7–102(A)(3), which states:

(A) In his representation of a client, a lawyer shall not:
. . .
(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.

Assuming without deciding that the information received by Sanders from Dr. Jones and Mrs. Hawkins' attorney did not constitute a "confidence or secret" which a lawyer generally may not reveal, neither CrR 3.2 nor JCrR 2.09 specifies who has the duty to provide facts for the court's consideration. The quoted rules state only that "the court shall, on the available information, consider the relevant facts . . ." JCrR 2.09(b); CrR 3.2(b).[3] Further, the Hawkinses ignore an ethical standard of paramount importance:

---

[1] As we explained in *Hansen v. Wightman, supra* at 94,
"The Code of Professional Responsibility is comprised of (a) Canons, which express general concepts regarding the standards of conduct expected of lawyers; (b) Ethical Considerations (EC), which represent behavioral aims which lawyers should seek to achieve; and (c) Disciplinary Rules (DR), which set forth levels of deportment which must be met."

[2] The pretrial release hearing was conducted in justice court; therefore, JCrR 2.09 governs; however the provisions of JCrR 2.09 and CrR 3.2 are identical. Both rules identify the relevant factors as follows:
the length and character of the defendant's residence in the community; his employment status and history and financial condition; his family ties and relationships; his reputation, character and mental condition; his history of response to legal process; his prior criminal record; the willingness of responsible members of the community to vouch for the defendant's reliability and assist him in appearing in court; the nature of the charge; and any other factors indicating the defendant's ties to the community.

[3] The American Bar Association's standards relating to pretrial release include this commentary: "The basic criticism of the administration of bail has been that magistrates were required to make decisions without having sufficient facts. . . . No agency charged with the specific duty of ascertaining facts relevant to release

that an attorney must advocate zealously his client's interests to the fullest extent permissible by law and the disciplinary rules. (CPR) DR 7–101(A)(1).

While it can be argued that the draftsmen of JCrR 2.09 assumed defense counsel would participate in furnishing information for the court, there is no indication as to the length to which defense counsel should go in revealing information damaging to his client's stated interests. Manifestly, defense counsel has an ethical duty to disclose that which he is required by law to reveal. Appellants, however, have not cited any clear provision of the law which *requires*. defense counsel to volunteer information damaging to his client's expressed desire to be released from custody.

█ We believe that the duty of counsel to be loyal to his client and to represent zealously his client's interests overrides the nebulous and unsupported theory that our rules and ethical code mandate disclosure of information which counsel considers detrimental to his client's stated interest. Because disclosure is not "required by law," appellants' theory of liability on the basis of ethical or court rule violations fails for lack of substance.

Turning then to the Hawkinses' theory of a common–law duty to warn or disclose, we note common–law support for the precept that attorneys must, upon learning that a client plans an assault or other violent crime, warn foreseeable victims. *See Tarasoff v. Regents of Univ. of Cal.*, *supra; State ex rel. Sowers v. Olwell*, 64 Wn.2d 828, 394 P.2d 681, 16 A.L.R.3d 1021 (1964); *Dike v. Dike*, 75 Wn.2d 1, 448 P.2d 490 (1968). *Olwell* and *Dike* make clear our Supreme

other than the defendant's criminal record and the nature of the present charge ordinarily exists. Unfortunately counsel, who is present in only a limited number of cases at this stage, seldom makes a special effort to supply the judicial officer with background facts. . . . Where public defender and other assigned lawyers provide representation on an institutional basis, they are frequently too pressed for time to make a special point of such an inquiry and, most important, to verify the information they may receive in an interview.

"The ideal system would involve the creation of an independent agency answerable directly to the court." (Citations omitted.) *ABA Standards Relating to Pretrial Release* § 4.5, Commentary at 50 (Approved Draft 1968).

Court's willingness to limit the attorney's duty of confidentiality when the values protected by that duty are outweighed by other interests necessary to the administration of justice. The difficulty lies in framing a rule that will balance properly "the public interest and safety from violent attack" against the public interest in securing proper resolution of legal disputes without compromising a defendant's right to a loyal and zealous defense. We are persuaded by the position advanced by amicus "that the obligation to warn, when confidentiality would be compromised to the client's detriment, must be permissive at most, unless it appears beyond a reasonable doubt that the client has formed a firm intention to inflict serious personal injuries on an unknowing third person."

Because appellants rely to a great extent upon *Tarasoff* in arguing a common–law duty to disclose, we will demonstrate that the *Tarasoff* decision is inapposite even though the facts are equally atypical and tragic. Tatiana Tarasoff was killed by one Prosenjit Poddar. The victim's parents alleged that 2 months earlier Poddar confided his intention to kill Tatiana to a defendant, Dr. Moore, a psychologist employed by the University of California. After a brief detention of Poddar by the police at Moore's request, Poddar was released pursuant to order of Dr. Moore's superior. No one warned Tatiana of her peril. The plaintiffs claimed the defendant psychologists had a duty to warn foreseeable victims. Defendants denied owing any duty of reasonable care to Tatiana. The trial court sustained a demurrer to the complaint which was reversed on appeal. The Supreme Court of California concluded that the complaint could be amended to state a cause of action against the psychologists by asserting that they had or should have determined Poddar presented a serious danger to Tatiana, pursuant to the standards of their profession, but had

failed to exercise reasonable care for her safety.

In *Tarasoff*, the defendant psychologists had first–hand knowledge of Poddar's homicidal intention and knew it to be directed towards Tatiana Tarasoff, who was wholly unaware of her danger. The knowledge of the defendants in *Tarasoff* was gained from statements made to them in the course of treatment and not from statements transmitted by others. Further, the California court in *Tarasoff* did not establish a new duty to warn, but only held that psychologists must exercise such reasonable skill, knowledge, and care possessed and exercised by members of their profession under similar circumstances.

In the instant case, Michael Hawkins' potential victims, his mother and sister, knew he might be dangerous and that he had been released from confinement, contrary to Tatiana Tarasoff's ignorance of any risk of harm. Thus, no duty befell Sanders to warn Frances Hawkins of a risk of which she was already fully cognizant. Further, it must not be overlooked that Sanders received no information that Hawkins planned to assault anyone, only that he was mentally ill and likely to be dangerous to himself and others. That Sanders received no information directly from Michael Hawkins is the final distinction between the two cases.

The common–law duty to volunteer information about a client to a court considering pretrial release must be limited to situations where information gained convinces counsel that his client intends to commit a crime or inflict injury upon unknowing third persons. Such a duty cannot be extended to the facts before us.

In view of our disposition of this case, we do not reach the question of respondent Sanders' claimed immunity from civil liability.

346

The decision of the Superior Court granting summary judgment dismissing the respondents as party defendants is affirmed.

DORE and RINGOLD, JJ., concur.