(640 P.2d 324)
No. 52,950

STATE OF KANSAS, *Appellee,* v. BILL CARLIN, *Appellant.*

Petition for review denied March 3, 1982.

Opinion filed January 28, 1982.

*Andrew R. Heyl,* of Overland Park, for appellant.

*Larry McClain,* assistant district attorney; *Dennis W. Moore,* district attorney; and *Robert T. Stephan,* attorney general, for appellee.

Before FOTH, C.J., SPENCER and MEYER, JJ.

MEYER, J.: This is an appeal from a conviction of making a terroristic threat, K.S.A. 21-3419.

On January 4, 1980, Bill Carlin (appellant) called Michael VanLandingham, director of the Social and Rehabilitation Services (SRS) in Johnson County, Kansas, and expressed dissatisfaction with the way his application for benefits was being processed. During the course of the conversation, appellant made several threats which are the basis for the charges.

Through the course of several appearances and preliminary hearings, the trial court informed appellant of his right to counsel. Appellant stated he would rather act as his own attorney. The court inquired as to appellant's education and ruled that an attorney would be appointed to sit with the appellant and assist him in any legal matters he might encounter in the case. Appellant was unable to meet $1,500 bond and was incarcerated.

On February 1, 1980, the case again came on for preliminary hearing. The State requested that a competency determination be made upon appellant's competency to stand trial. Appellant stated he was competent and objected to the procedure. The court granted the motion to determine competency. On April 29, 1980, the court found appellant to be competent to stand trial.

On September 17, 1980, the court extensively questioned appellant about his knowledge of the law and explained the procedural matters in which an attorney would be needed to adequately present appellant's case. Appellant continued to state that he wanted to represent himself. The court ordered that the court-appointed attorney continue to represent him.

At the same hearing, the court ordered that tapes recovered by the attorney for appellant be turned over to the district attorney's office. Appellant's attorney objected to the tapes being turned over on the grounds that they were work product and gained through the attorney-client privilege. Appellant himself wanted the tape recordings to be turned over to the State. The full text of the telephone conversation between appellant and Mr. VanLandingham is contained in one of the tapes.

The case was tried to a jury and appellant was convicted by a jury of the charge of terroristic threat in violation of K.S.A. 21-3419.

Appellant was given credit for the year he spent in jail pending trial and the balance of the sentence was suspended. Appellant was ordered released from custody.

Appellant first contends that the court erred in denying him the right to represent himself.

The United States Supreme Court case establishing a right of self-representation was *Faretta v. California,* 422 U.S. 806, 45 L.Ed.2d 562, 95 S.Ct. 2525 (1975).

In order for an accused to represent himself, he must " 'knowingly and intelligently' " forego the benefits of counsel. In order to assure that there is a knowing and intelligent waiver, the accused "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " 422 U.S. at 835. In *Faretta,* the record clearly showed that the accused was "literate, competent, and understanding, and that he was voluntarily exercising his informed free will." 422 U.S. at 835. It was also noted that "technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself." 422 U.S. at 836.

The court held that in forcing the accused to accept a state-appointed public defender against his will, the California courts deprived him of his constitutional right to conduct his own defense and the judgment was vacated and remanded.

*Faretta* recognized that a state may—even over objection by the accused—appoint a "standby counsel" to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of his self-representation is necessary. 422 U.S. at 834-35, n. 46.

In the instant case, the trial judge made the accused aware of the dangers and disadvantages of self-representation. The trial judge spent considerable time advising appellant of the problems with procedure with which he would be faced and the need for an attorney. The accused continually requested that counsel not be appointed in spite of such warnings. The only distinguishing factor of this case is that appellant had some emotional disturbances which were evident from a reading of the transcripts of the various preliminary hearings. He spoke of things such as the "Klong" and "ream power" and other flights of fancy which

indicated he was not entirely in touch with reality. Also, at one time, he had been institutionalized for mental problems. We conclude there was sufficient evidence before the trial court from which it could conclude that appellant was not competent to knowingly and intelligently waive his rights to counsel.

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L.Ed. 1461, 58 S.Ct. 1019 (1938).

In *Moore v. Michigan*, 355 U.S. 155, 2 L.Ed.2d 167, 78 S.Ct. 191 (1957), it was indicated in dicta that evidence of emotional disturbance may be a factor in determining whether there was an intelligent waiver of the right to counsel.

Furthermore, courts indulge "every reasonable presumption against waiver" of fundamental constitutional rights and "do not presume acquiescense in the loss of fundamental rights." *Johnson v. Zerbst*, 304 U.S. at 464.

We conclude the trial court's refusal to allow appellant to represent himself was based upon evidence of incompetence to knowingly and intelligently waive his right to counsel and said refusal is affirmed on that basis.

Appellant contends the court erred in ordering his appointed counsel to turn over to the State tape recordings allegedly gained through attorney-client confidential communications. Appellant also argued that the tapes were work product.

The tapes were not prepared in anticipation of trial; they cannot be considered work product for that reason. Appellant evidently tape-recorded all of his conversations with SRS personnel (and others). One tape was of the conversation with Mr. VanLandingham in which the appellant made the threats. The other was of a conversation with a social worker from SRS in which the appellant referred to the threats made to VanLandingham. Only the recording of the conversation with VanLandingham was admitted into evidence.

There is a line of cases dealing with the duty of an attorney to turn over physical evidence gained as a result of confidential communications between client and attorney.

In *State ex rel. Sowers v. Olwell*, 64 Wash. 2d 828, 394 P.2d 681 (1964), an attorney appealed from an order placing him in con-

tempt for refusing to produce, at a coroner's inquest, material evidence of a crime, specifically a knife considered as a possible murder weapon. The court held that while the privilege protected the attorney from being required to give testimony concerning information received by him from his client in the course of their relationship, such privilege did not extend to the murder weapon. The court held:

"We are in agreement that the attorney-client privilege is applicable to the knife held by appellant, but do not agree that the privilege warrants the attorney, as an officer of the court, from withholding it after being properly requested to produce the same. The attorney should not be a depository for criminal evidence . . . which in itself has little, if any, material value for the purposes of aiding counsel in the preparation of the defense of his client's case. Such evidence . . . could clearly be withheld for a reasonable period of time. It follows that the attorney, after a reasonable period, should, as an officer of the court, on his own motion turn the same over to the prosecution." 64 Wash. 2d at 833-34.

The case goes on to discuss the privilege against self-incrimination; however, in the instant case that issue was not raised below, nor is it asserted on appeal and we are precluded from considering it.

In *Morrell v. State,* 575 P.2d 1200 (Alaska 1978), the duty to turn over physical evidence was extended to "mere evidence" of a client's crime.

"[N]o distinction should be drawn in the privilege context between physical evidence obtained by a criminal defense attorney which is 'mere evidence' of a client's crime and that which may be said to be either a fruit or an instrumentality of the crime." 575 P.2d at 1209.

*Morrell* disapproved language in an earlier case, *In re Ryder,* 263 F. Supp. 360 (E.D. Va.), *aff'd* 381 F.2d 713 (4th Cir. 1967), which stated in dicta that neither the client nor his attorney could be compelled to produce merely evidentiary articles, as opposed to fruits or instrumentalities of the crime.

See also *People v. Lee,* 3 Cal. App. 3d 514, 83 Cal. Rptr. 715 (1970), wherein it was held that the attorney-client privilege does not give an attorney the right to withhold evidence. The court stated that it would be an abuse of a lawyer's professional responsibility to knowingly take possession of and secrete instrumentalities of a crime.

It is noted, however, that both *Morrell* and *Lee* involved dicta, because under the facts of both cases, the evidence was given to the attorney by third parties, so that the evidence was not ob-

tained as a direct result of a confidential communication with the client.

See also *People v. Meredith,* 29 Cal. 3d 682, 175 Cal. Rptr. 612, 631 P.2d 46 (1981), recognizing an attorney's duty to turn over evidence and stating that whenever defense counsel removes or alters evidence, the statutory privilege does not bar revelation of the original location or condition of the evidence in question.

This question is one of first impression in Kansas. K.S.A. 60-426(*a*) provides:

"[C]ommunications found by the judge to have been between lawyer and his or her client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (1) if he or she is the witness to refuse to disclose any such communication, and (2) to prevent his or her lawyer from disclosing it . . . . The privilege may be claimed by the client in person or by his or her lawyer, or if an incapacitated person, by either his or her guardian or conservator, or if deceased, by his or her personal representative."

Since the appellant's attorney had a duty to turn over the evidence under the line of cases mentioned above, there was no error in the court ordering him to do so.

Furthermore, we have a unique situation in the case at bar because the client was more than happy to turn the evidence over to the State and originally requested the attorney to tell the court about the existence of the tapes because he wanted to be released to go home to look for them. We conclude that the communications ceased to be privileged, and, thus, the evidence was not found as a result of a confidential communication.

"Communications between attorney and client are privileged when made in the course of that relationship and in professional confidence. Communications not made in such confidence are not privileged. Where the client chooses to make or receive communications from his attorney in the presence and hearing of third persons they cease to be confidential and are not entitled to the protection afforded by the privilege." *Fisher v. Mr. Harold's Hair Lab, Inc.,* 215 Kan. 515, Syl. ¶1, 527 P.2d 1026 (1974).

Because the evidence was not obtained by the attorney as a result of a confidential communication, there was no error in ordering the tapes turned over to the State.

Affirmed.