# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-01419-SCT

*GREGORY L. REDMOND*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/16/2008 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: HUNTER N. AIKENS |
| | LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA H. TEDDER |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/02/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., LAMAR AND KITCHENS, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     Gregory Redmond was convicted of statutory rape of a twelve-year-old girl and sentenced to life in the custody of the Mississippi Department of Corrections (MDOC). He raises two issues on appeal: (1) the trial court erred in admitting hearsay statements of the victim under the tender-years exception, and (2) the trial court erred in denying his motion

to suppress his statement. Finding no merit in these arguments, we affirm Redmond's conviction and sentence.

**FACTS**

¶2.     Redmond was indicted under Mississippi Code Section 97-3-65(1)(b) for the statutory rape of Tracy Potts.[1]  At trial, the State submitted evidence that at the time of the incident, Redmond was twenty-seven and Potts was twelve.  Testimony also established that Redmond was a family friend.

¶3.     Potts, sixteen at the time of trial, testified that Redmond was supposed to take her to a friend's house but instead drove her to his house, where he forced her out of the car and into his home.  She stated that he had placed a pistol on the table and had instructed her to remove her clothes; he then had proceeded to have sexual intercourse with her in his living room and bedroom.

¶4.     Potts stated that after she had missed her menstrual cycle, her mother, Tammy Potts,[2] questioned Potts about whether Redmond had inappropriately touched her.  In response to her daughter's affirmative answer, Tammy took Potts to the hospital, where they learned that Potts was pregnant.  Potts told her mother that Redmond was the father.  Additionally, a videotaped interview of Potts at age twelve discussing the incident with a counselor at the

---

[1]This Court uses a pseudonym for the victim.

[2]We also use a pseudonym for the victim's mother.

Child Advocacy Center was published to the jury without objection (pretrial or during trial) by Redmond. Potts's testimony also was corroborated by her mother's testimony.[3]

¶5. Potts aborted the fetus. The fetus was obtained by a Jackson police officer, who submitted it to a DNA testing facility along with a blood sample from Redmond. Roy Scales, owner of the facility, testified that the probability of paternity for Redmond is 99.99%.

¶6. Redmond also testified at trial. He stated that he had known Tammy Potts for years, and had gone to their home one night for a "get-together" where he had consumed about three drinks. Redmond claimed that he had been drugged, because he had awakened the following day around two or three p.m. on Tammy's couch in a state of dizziness, with his money missing. Redmond testified that later that day that Tammy and her boyfriend had arrived at his house with a pistol and a picture of himself asleep on Tammy's couch with his pants pulled down to his ankles and Potts straddling him. He stated the picture showed "penetration" and "on the picture she [Potts] did place me inside of her so I know for a fact that that's how she came across my sperm." Redmond testified that Tammy had demanded $3,000 or she would go to the police with the picture. Redmond claimed to have paid her some of the money in cash and that he had destroyed the picture. Redmond denied ever having sex with Potts.

¶7. During the State's case-in-chief, the jury heard a taped statement[4] given by Redmond to the police. In this statement, Redmond denied ever touching Potts. He also denied

[3]Tammy's testimony was the subject of a pretrial hearing held under the tender-years exception, and this hearing will be discussed further under the first issue.

[4]Redmond moved pretrial to suppress this statement, and the trial court's denial of this motion will be discussed further under the second issue.

paternity of Potts's baby. He made no mention of the alleged blackmail scheme to which he

testified at trial.

### I. Whether the trial court erred in admitting hearsay statements under the "tender-years exception."

¶8. The tender-years exception is found in Mississippi Rule of Evidence 803(25) and

provides that:

> A statement made by a *child of tender years* describing any act of sexual contact performed with or on a child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide *substantial indicia of reliability*; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.[5]

And in ***Veasley v. State***, this Court held that "there is a rebuttable presumption that a child

under the age of twelve is of tender years."[6] No presumption exists if the child is twelve or

older.[7] In that case, the court must:

> make a case-by-case determination as to whether the victim is of tender years. This determination *should be on the record* and based on a factual finding as to the victim's mental and emotional age. If the court finds that the declarant is of tender years, then it must still rule on the 803(25)(a) and (b) factors before admitting the testimony.[8]

---

[5]Miss. R. Evid. 803(25) (emphasis added).

[6]***Veasley v. State***, 735 So. 2d 432, 436 (Miss. 1999).

[7]*Id.* at 437.

[8]*Id.* (emphasis added).

The trial court also should make an *on-the-record finding* of substantial indicia of reliability.[9]

¶9.     Redmond generally argues that the trial court erred in allowing into evidence hearsay statements under the tender-years exception. We presume Redmond challenges Tammy's testimony, which was the subject of the pretrial hearing, as well as the taped forensic interview published to the jury. He argues the trial court failed to make any of the required on-the-record findings in accordance with Rule 803(25) and our caselaw.

¶10.     During a hearing on pretrial motions, the State moved to show its "intent" to apply the tender-years exception to admit statements Potts had made to her mother. The State erroneously informed the judge that Potts was presumed under the law to be a child of tender years. It then examined Tammy Potts regarding the events leading to Potts's pregnancy and statements that Potts had made to her mother about Redmond.

¶11.     At the close of Tammy's testimony during the pretrial hearing, Redmond provided the following objection: "we would object to allowing any hearsay statements coming in as the child is available as a witness to everything that she said to people and everything that occurred to her. We would object to these out-of-court statements." Notably, Redmond did not object based on the court's failure to state on the record that Potts was a child of tender years or that the testimony failed to show substantial indicia of reliability, arguments that he now asserts for the first time on appeal. We have held that a criminal defendant "cannot expand his objection at trial to encompass other claims for the first time on appeal."[10] Furthermore, Redmond failed to object (pretrial or at trial) to the taped forensic interview

---

[9]Miss. R. Evid. 803(25) cmt.

[10]*Gray v. State*, 728 So. 2d 36, 60 (Miss. 1998).

published to the jury. In fact, he agreed that the jury could see an edited version of the taped interview. "This Court has consistently held that failure to make a contemporaneous objection constitutes waiver of an issue on appeal."[11] Therefore, we find that Redmond's arguments are procedurally barred.

**II.     Whether the trial court erred in denying Redmond's motion to suppress his statement.**

¶12.    This Court will reverse a trial court's ruling on a motion to suppress "if the incorrect legal principle was applied; if there was no substantial evidence to support a voluntary, knowing, and intelligent waiver of *Miranda* rights; and if the denial was a result of manifest error."[12] Furthermore, "[t]he trial judge must determine beyond a reasonable doubt that a confession was voluntary and knowing and that the defendant was given his *Miranda* rights *prior* to any custodial interrogation."[13] This is a factual determination made by the trial court based on the totality of the circumstances.[14] The State has the burden to prove that a confession is voluntary.[15] The State makes out a prima facie case by presenting the testimony of an officer or any person with knowledge of facts concerning the statement.[16] If the

---

[11]*Derouen v. State*, 994 So. 2d 748, 751 (Miss. 2008).

[12]*Scott v. State*, 8 So. 3d 855, 861 (Miss. 2008).

[13]*Id.* (emphasis added).

[14]*Martin v. State*, 854 So. 2d 1004, 1007 (Miss. 2003).

[15]*Scott*, 8 So. 3d at 861.

[16]*Id.*

accused offers testimony or evidence to the contrary, the State must offer the testimony of all the officers who witnessed the confession.[17]

¶13.    Redmond argues that the trial court abused its discretion in denying his motion to suppress, thereby allowing the State to admit his taped statement.  He argues that his taped statement was inadmissable under *Miranda v. Arizona*,[18] as he was not provided his *Miranda* rights until *after* he had provided the statement.  In support of this argument, he points to the date and time on the *Miranda* form, which shows January 25, 2005, at 12:25, while the evidence envelope for the audio tape shows January 25, 2005, at 12:00.

¶14.    The trial court held a hearing on Redmond's motion to suppress and heard testimony from the two officers who were present during Redmond's statement.  Detective Harvey Davis testified that Redmond was arrested and taken to his office.  Davis stated that he read Redmond his *Miranda* rights and had Redmond initial each right printed on a waiver form. He also read to Redmond the waiver included on the second half of the form.  Davis stated that Redmond signed the form under the portion listing the *Miranda* rights and again under the waiver.  After Redmond signed the form, Davis asked Redmond if he would like to provide a statement, to which Redmond responded "yes."  Davis testified that, at that point, he began recording Redmond's statement.  Davis stated that he erroneously wrote January 25, 2005, on the evidence envelope when he actually logged the tape into evidence on January 26, 2005.

---

[17]*Id.*

[18]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶15.   During Davis's testimony, the trial court listened to the taped statement. At the end of the tape, Davis asked Redmond if he had any questions. At that point, Redmond responded he might need a lawyer, and Davis responded that Redmond had a right to a lawyer, just as Davis previously had explained to him.

¶16.   Officer Lee Partee witnessed Redmond's statement and also signed the waiver form. He testified that Davis had read Redmond his *Miranda* rights prior to obtaining a statement. Partee also stated that Redmond had signed the form before providing a statement.

¶17.   After reviewing the suppression-hearing transcript and Redmond's taped statement, we find the trial court's ruling is supported by substantial evidence. The two officers testified that Redmond was provided and waived his *Miranda* rights prior to any custodial interrogation. Further, Redmond's question at the end of the taped statement and Davis's response corroborate the officers' testimony. Redmond failed to provide any evidence or testimony in rebuttal to the officers' testimony. Therefore, we affirm the trial court's admission of Redmond's statement, as the record supports a finding that Redmond knowingly, voluntarily, and intelligently waived his *Miranda* rights prior to providing a statement.

**CONCLUSION**

¶18.   We find that Redmond is procedurally barred from arguing the trial court abused its discretion in allowing the State to introduce hearsay statements under the tender-years exception. Additionally, substantial evidence supported the admission of Redmond's taped statement. So the trial court did not manifestly err in denying Redmond's motion to suppress. Therefore, we affirm Redmond's conviction and sentence.

8

**¶19. CONVICTION OF STATUTORY RAPE AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.**