**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2022-CT-00419-SCT**

*JIMMY ALLEN*

*v.*

*STATE OF MISSISSIPPI*

**ON WRIT OF CERTIORARI**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/18/2022 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | AKILLIE MALONE OLIVER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY IS REINSTATED AND AFFIRMED - 06/05/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. A jury convicted Jimmy Allen of six counts of statutory rape of his then-eleven-year-old daughter. But on appeal, the Court of Appeals reversed. That court threw out Allen's conviction because the jury was not instructed on an element of the offense—that it had to

find Allen was twenty-four months or more older than his under-fourteen-year-old daughter.[1]

¶2.     We granted the State's petition for certiorari. And after review, we find the trial judge gave Allen the exact elements instructions he asked for. Under the invited-error doctrine, "[i]t is *axiomatic* that 'a defendant cannot complain on appeal of alleged errors invited or induced by himself.'"[2] Thus, Allen cannot flip-flop on appeal and now attack the very instructions he crafted, submitted, and received. Instead, the invited-error doctrine squarely applies.

¶3.     For this reason—and because Allen's other appellate claims lack merit—we reverse the decision of the Court of Appeals. We reinstate and affirm the judgment of conviction.

**Background Facts & Procedural History**

¶4.     When Jada[3] was eight or nine years old, her mother went to prison. Jada then moved in with her father, Jimmy Allen. Allen's wife and her two sons also lived in Allen's two-bedroom apartment. When Jada was eleven years old, her father began raping her when her stepmother and brothers were gone.

¶5.     Jada testified that her father raped her on six different occasions over the course of six months. Each time, he positioned her body differently so he could either digitally penetrate her vagina, put his penis in her anus, or perform oral sex. Jada testified her father

---

[1] *Allen v. State*, No. 2022-KA-00419-COA, 2024 WL 934186 (Miss. Ct. App. Mar. 5, 2024).

[2] *Thomas v. State*, 249 So. 3d 331, 347 (Miss. 2018) (emphasis added) (quoting *Galloway v. State*, 122 So. 3d 614, 645 (Miss. 2013); *O'Connor v. State*, 120 So. 3d 390, 397 (Miss. 2013); *Singleton v. State*, 518 So. 2d 653, 655 (Miss. 1988)).

[3] Jada is a fictitious name used to protect her identity.

2

always wore a condom, which he removed from a gold packet in his top dresser drawer. And he made her cover her face with a pillow because, in her words, "he did not want me to watch him, to see what he was doing." If Jada started crying, Allen threatened to "whoop" her, mentioning the walls to the apartment were thin. Each time he raped Jada, Allen made the young girl bathe in bleach. Allen warned her not to tell anyone, threatening to keep her away from her mother's family. He also bribed her with a phone.

¶6. At first, Jada told no one. But eventually she confided in a friend who had revealed something similar had happened to her. Jada then told her sister and her maternal aunt M.J.

¶7. After learning about the sexual assaults, M.J. immediately sent for Jada and took her to King's Daughters Hospital in Yazoo City. Because Jada bathed in bleach after each sexual assault, the nurses did not perform a rape kit. Jada tested negative for sexually transmitted diseases and bore no physical evidence of abuse.

¶8. Jennifer Creel, an investigator with the Mississippi Department of Child Protection Services (CPS), met Jada at the hospital. Creel called Allen, simply relaying that Jada was at the hospital and that he needed to come. Though Allen told Creel he was on his way, he never showed up. Instead, two days later, he met Creel at her office. Allen had packed Jada's clothes in garbage bags. He told Creel he wanted to relinquish Jada to the state because of what she had done. Allen told Creel that Jada had made up the allegations because he had taken her phone away and would not let her wear fake eyelashes. Based on, as Creel put it, "substantiated allegations" of abuse, Jada was removed from Allen's home and placed in foster care.

¶9. A grand jury indicted Allen on six counts of statutory rape—sexual intercourse with a child under the age of fourteen by someone more than twenty-four months older in violation of Mississippi Code Section 97-3-65(1)(b) (Supp. 2017).

¶10. He was tried in the Circuit Court of Yazoo County. At trial, the State first called Jada, who testified about her father raping her. During her testimony, the judge admitted her birth certificate without objection. Because Allen is Jada's father, the certificate showed not only Jada's birthday but also Allen's. This public record proved Jada was eleven years old and her father, Allen, was thirty-three years old when he raped her.

¶11. Jada's aunt M.J. also testified, over Allen's objection. So did CPS investigator Creel and Child Advocacy Center forensic interviewer Amber Cope, who had interviewed Jada. Through Creel, the State introduced the CPS investigative report she compiled. And when Cope testified, the State introduced and played the video of the forensic interview. Allen objected to the CPS report, asserting it contained hearsay and "was repetitive and prejudicial." Allen also objected to the video. He argued "we can't cross-examine a video. And she's already given her statement under oath before this court . . . —it is just accumulation, and it's prejudicial." The trial judge overruled these objections.

¶12. After the jury watched the forensic-interview video, the State asked Cope—who testified she had conducted more than five hundred interviews with alleged child sex victims—what stood out about Jada's interview. Cope explained that Jada provided "lots of details"—

> She talked about the different positions he would make her get in. Where she would be on her stomach but on her knees with her butt in the air.

4

She talked about when she would just get on her knees. She discussed when he would make her lay on her back and when he did this, he didn't want to see her face, so he would cover her face with a pillow or a blanket. She discussed him putting a partition. The wrapper was gold. The partition was a condom, I came to know. She discussed having to take baths in bleach. She discussed him with her on the couch making her lay sideways. That position didn't work out. Took him back to his bedroom. She talked about when he first put it in her butt, put his private part in her butt about her holding the back of the bed, her squeezing her booty so he couldn't put it in and he still did and how that hurt. She talked about how when he put it in her private, it stung. She had very, very good details that she gave all throughout the interview.

The State then rested.

¶13. Allen called a doctor and nurse practitioner. Both testified about treating Allen for sexually transmitted diseases, which Jada did not have. The doctor suggested sexual intercourse would have been painful for someone in Allen's condition. But Allen had informed the doctor that he had sex before seeking treatment. Allen also called his mother, his ex-wife, and his son.

¶14. After deliberating, the jury found Allen guilty on all six statutory-rape counts. The judge sentenced him to thirty years' imprisonment.[4]

¶15. Allen appealed. And his appeal was assigned to the Mississippi Court of Appeals. Though Allen raised five issues, the Court of Appeals addressed only one. The appellate court found the trial court reversibly erred by giving Allen's requested elements instructions, which did not require the jury to find Allen was more than twenty-four months older than

---

[4] Specifically, Allen was sentenced to thirty years each for Counts I, IV, V, and VI, with the thirty-year sentences for Counts IV-VI to run concurrently with Count I's thirty-year sentence. For Counts II and III, he was sentenced for each to thirty years suspended, followed by five years' post-release supervision. The suspended sentence for Count II was ordered to run concurrent to Count I, and the suspended sentence for Count III was ordered to run concurrent with the sentences for Counts I and II.

Jada. *Allen*, 2024 WL 934186, at * 2-4.

¶16.    The State petitioned for certiorari review, which we granted.

### Discussion

**I.      Elements Instruction**

¶17.    We begin with Allen's claim that the trial court did not instruct the jury on the crime's essential elements—the claim for which the Court of Appeals found reversible error. *Allen*, 2024 WL 934186, at * 2-4.

¶18.    Both the State and Allen had submitted elements instructions to the trial court. Prior to the jury instruction conference, the trial court gave the State and defense counsel the opportunity to review all the submitted instructions and confer. After conferring, the State announced to the trial court that it was withdrawing its elements instructions—presumably because they mistakenly contained the elements of gratification of lust, not statutory rape. Instead, the State agreed to "accept the defense's[.]" Allen had submitted identical instructions for each statutory rape count, the only difference being the dates of each charged rape. While Allen's instructions required the jury find Allen had intercourse with Jada, a child under the age of fourteen, his instructions omitted the requirement the jury find Allen was more than twenty-four months older than his daughter.

¶19.    We recognize that not instructing the jury on every essential element of the crime is error. *Harrell v. State*, 134 So. 3d 266 (Miss. 2014). But under Mississippi law, it is an error that, if invited by the defendant, can be waived. *Thomas*, 249 So. 3d at 347-48. Here, it was only after the jury found Allen guilty of raping his daughter and the trial court denied

6

his motion for a new trial that Allen first complained on appeal that the instructions *he submitted* and the State and trial court accepted were constitutionally infirm. After review, we agree with the State that Allen is estopped from asserting this argument because of the invited-error doctrine.

¶20. "It is *axiomatic* that 'a defendant cannot complain on appeal of alleged errors invited or induced by himself.'" ***Thomas***, 249 So. 3d at 347 (emphasis added) (quoting ***Galloway***, 122 So. 3d at 645; ***O'Connor v. State***, 120 So. 3d at 397; ***Singleton***, 518 So. 2d at 655). This includes instructional errors. ***Id.*** Specifically, "a defendant cannot complain of an instruction which he, not the state, requested." ***Harris v. State***, 861 So. 2d 1003, 1015 (Miss. 2003) (citing ***Buford v. State***, 372 So. 2d 254, 256 (Miss. 1979); ***Musselwhite v. State***, 212 Miss. 526, 54 So. 2d 911 (1951)).

¶21. Yet the Court of Appeals rejected the State's invited-error argument. Specifically, the appellate court found the State's reliance on ***Thomas*** was "misplaced." ***Allen***, 2024 WL 934186, at * 3. We agree with the Court of Appeals that the facts and circumstances leading to invited error in ***Thomas*** are different than the ones here. In ***Thomas***, the defendant complained for the first time on appeal that a robbery-elements instruction—an instruction that he specifically objected to—should have been given. ***Thomas***, 249 So. 3d at 348. Here, Allen does something different. On appeal, he attacks his *own instruction that was given*, asserting that the very instruction the trial court gave at Allen's request was faulty. Even so, ***Thomas*** hardly created new law or established some bright line rule.

¶22. Rather, ***Thomas*** merely applied the widely recognized estoppel principle of invited

7

error to the context of constitutionally defective jury instructions—as this Court as well as courts from other jurisdictions have done for decades.  *Id.* at 347 (citing *Harris*, 861 So. 2d at 1015; *Buford*, 372 So. 2d at 256; *United States v. Askew*, 403 F.3d 496, 505-06 (7th Cir. 2005); *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997); *People v. Zapata*, 779 P.2d 1307, 1308-09 (Colo. 1989); *State v. Madigosky*, 966 A.2d 730 (Conn. 2009); *State v. Perdue*, 813 P.2d 1201, 1206 (Utah Ct. App. 1991); *State v. Henderson*, 792 P.2d 514, 515 (Wash. 1990)).  Indeed, for at least a century this Court has been clear that a defendant "has no right to complain" on appeal when the jury was instructed as the defendant requested. *Vaughn v. State*, 143 Miss. 722, 109 So. 727 (1926).  So this has been a longstanding principle in Mississippi jurisprudence.  *See, e.g.*, *Long v. State*, 163 Miss. 535, 141 So. 591, 594 (1932); *Renfrow v. State*, 154 Miss. 523, 122 So. 750, 751 (1929).

¶23.    That is what distinguishes this case from *Hunter v. State*, 684 So. 2d 625 (Miss. 1996).  In *Hunter*, the defendant was *denied* his submitted instruction on robbery, and neither the State nor the trial court had offered an alternative.  *Id.* at 635-37.  To the contrary, here, Allen secured the instructions he submitted after conferring with the State and having the State agree to withdraw its instructions, as opposed to amend or correct them.  So unlike *Hunter*, Allen did get the exact instructions he wanted.

¶24.    In refusing to find invited error, the Court of Appeals simply chocked up Allen's instructions to a mistake on his attorney's part, not trial strategy.  *See Allen*, 2024 WL 934186, at *7 (attributing Allen's elements instruction to mistaken belief that "the instruction properly instructed the jury on the elements of the crime" (citing *Jennings v. State*, 311 So.

8

3d 712 (Miss. Ct. App. 2021))). This was wholly speculative on the Court of Appeals' part.

¶25. But what is not speculative is the fact that inclusion of the age-gap element would have made *zero* difference in the jurors' deliberations. The fact Allen, the victim's biological father, was more than twenty-four months older was not only proved beyond a reasonable doubt but was also never contested by Allen. Nor could it have been. The State introduced Jada's birth certificate—without objection from Allen. And the birth certificate shows her young age when Allen raped her. Because he is her father, Jada's birth certificate also contains Allen's birth date.

¶26. In short, we see no reason to divine Allen's attorney's tactics because the undeniable truth is that Allen chose to submit instructions without the age-gap element, and the State and trial court accepted his request. So based on the invited-error doctrine, Allen cannot now complain that the instructions were defective. *Thomas*, 249 So. 3d at 347 (citing *Harris*, 861 So. 2d at 1015).

¶27. As we explained in *Thomas*, the reason for the invited-error doctrine is obvious—it removes the temptation for defendant's trial counsel "to salt the record with error" thereby planting potential grounds for reversal should the jury convict. *Id.* (quoting *State v. Hargrove*, 293 P.3d 787, 795 (Kan. Ct. App. 2013). Or as one appellate court aptly put it, the invited-error doctrine prevents defense counsel from "sandbag[ging] the trial judge by requesting and approving an instruction they know . . . will result in an automatic reversal, if given." *Rosen v. State*, 940 So. 2d 1155, 1161 (Fla. Ct. App. 2006) (second alteration in original) (quoting *Weber v. State*, 602 So. 2d 1316, 1319 (Fla. Ct. App. 1992)). This

9

universal refusal by courts to give defendants incentive to plant reversible error equally applies to submitting faulty jury instructions. ***Thomas***, 249 So. 3d at 347. As we noted in ***Thomas***, "[t]he allegation of constitutional error in the jury instruction does not require us to abandon the strict preclusion of review of invited error[.]" ***Id.*** (quoting ***Zapata***, 779 P.2d at 1308-09). Rather, a "less-than-strict application of the invited-error rule to jury instructions 'would put a premium on defendants misleading trial courts . . . .'" ***Id.*** (alteration in original) (quoting ***Henderson***, 792 P.2d at 515).

¶28. Here, Allen had a full jury trial. The jury heard all the evidence—including that he was thirty-three years old when he raped his eleven-year-old daughter. And Allen does not challenge the sufficiency of the age-gap evidence. While the jury should have been instructed on this uncontested element, Allen waived any complaint about this instructional error. Again, Allen received the exact instructions he asked the State to agree to and the trial court to give. *See **Thomas***, 249 So. 3d at 349 (acknowledging that trial judges may reasonably assume that an agreement between the State and defendant on jury instructions was "made for the mutual benefit of the parties or as a contemplated concession"). Thus, we decline to find reversible error from any jury instruction error that Allen invited.

¶29. We therefore reverse the decision of the Court of Appeals. And we address Allen's remaining appellate issues.

## II.     Assistance of Counsel

¶30. Alternatively, Allen argues his counsel was constitutionally deficient for submitting a jury instruction that omitted an essential element. But establishing ineffective assistance

10

of counsel requires two showings—(1) trial counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Doss v. State*, 19 So. 3d 690, 694-95 (Miss. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

¶31. On the deficiency prong, "[w]hether to request a certain instruction generally is a matter of trial strategy." *McCoy v. State*, 147 So. 3d 333, 347 (Miss. 2014) (citing *Havard v. State*, 928 So. 2d 771, 790-91 (Miss. 2006)). Allen asserts there was no reasonable trial strategy for omitting an essential element of the crime. But again, we need not try to guess Allen's attorney's motive. This is because Allen cannot establish the second prong—that he was prejudiced. Specifically, Allen cannot show the instruction—and in particular the missing age-gap element—prejudiced him. The fact that Allen was twenty-four months older than his biological daughter is undeniable and undisputed. So it is not true that, but for the missing element in the jury instruction, the jury would have found him not guilty of child rape beyond a reasonable doubt.

### III. Sufficiency of the Evidence

¶32. Allen next challenges the sufficiency of the evidence, claiming insufficient evidence showed the rapes occurred in Yazoo County. We disagree.

¶33. "Proof of venue is an essential part of criminal prosecution" that the state must prove beyond a reasonable doubt. *Hill v. State*, 797 So. 2d 914, 916 (Miss. 2001) (citing *Crum v. State*, 216 Miss. 780, 787, 63 So. 2d 242, 244 (1953); *Hester v. State*, 753 So. 2d 463, 467 (Miss. Ct. App. 1999)). And "[v]enue may be proved by either direct or circumstantial

evidence." *Id.* (citing *Jones v. State*, 606 So. 2d 1051, 1055 (Miss. 1992)). "As long as the evidence is sufficient to lead a reasonable trier of fact to conclude that the crime in the present case occurred at least partly in [Yazoo] County, then the evidence of venue is sufficient." *Id.* When reviewing the sufficiency of venue evidence, the State gets "the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Nuckolls v. State*, 179 So. 3d 1046, 1048 (Miss. 2015) (quoting *Conner v. State*, 138 So. 3d 143, 148 (Miss. 2014)).

¶34. Considering this standard, there is sufficient record evidence to prove beyond a reasonable doubt that Allen raped his daughter in Yazoo County. Jada testified her father raped her in his apartment where she also lived. And the CPS report listed Allen's home address in Yazoo County. *See Hensley v. State*, 912 So. 2d 1083, 1086 (Miss. Ct. App. 2005) (finding the victim's testimony that the rape occurred where the family lived was sufficient to prove venue). Further, Creel, the CPS worker—who responded when Jada presented at King's Daughters Hospital in Yazoo City—testified she "supervised a number of cases of physical and sexual abuse in Yazoo County." *Cf. Thomas v. State*, 784 So. 2d 247, 251 (Miss. Ct. App. 2000) (finding "the evidence that the responding officer was with the Clarksdale Police Department provide[d] the necessary evidence" that the crime occurred in Coahoma County, since "venue was not a contested fact in this trial").

¶35. Additionally, Allen did not challenge venue at trial or after the State's case. Instead, he complains for the first time in his supplemental brief supporting his certiorari petition that venue was not submitted to the jury. But as discussed, Allen received the exact instructions

he requested. So under the invited-error doctrine, this issue is likewise waived. *Thomas*, 249 So. 3d at 347. Not only does sufficient evidence prove the crimes occurred in Yazoo County, but Allen made no venue challenge at trial. Neither the State nor Allen suggested the rapes occurred anywhere other than Yazoo County. There was simply no venue-based factual dispute for the jury to resolve. *See Rooks v. State*, 529 So. 2d 546, 556 (Miss. 1988) (holding the defendants "were not entitled to a venue instruction unless and until they presented some evidence that venue was not properly in [the county where they were tried]" (citing *Fabian v. State*, 284 So. 2d 55 (Miss. 1973); *Harper v. State*, 478 So. 2d 1017 (Miss. 1985))).

### IV.    Tender-Years Hearsay Exception

¶36.    Allen also argues the trial judge wrongly admitted hearsay evidence through Jada's aunt M.J., the forensic interviewer, and the CPS report. Allen asserts for the first time on appeal that the trial judge failed to conduct a tender-years-exception hearing. While Allen never asked for a hearing, he now points to Mississippi Rule of Evidence 803(25). And he argues the judge's admission of Jada's statements to her aunt, the forensic interviewer, and CPS requires reversal. Because he did not object on this particular basis, this issue is waived. *Redmond v. State*, 66 So. 3d 107, 110-11 (Miss. 2011).

¶37.    Allen did object to this evidence—both in a pretrial motion in limine, which the trial judge deferred ruling on, and at trial. But each time, he chose to focus his hearsay objection on the fact that Jada had already testified. Specifically, he argued that any mention of what Jada told others about Allen was repetitive and violated the "best evidence" rule. Not once

13

did Allen argue the tender-years exception was inapplicable to Jada's statements.

¶38. Instead, when the trial judge asked why he should "exclude what *the child* told" these witnesses, Allen kept insisting "*the child* has already testified." (Emphasis added.) Allen never suggested Jada was not a child of tender years. Nor did he argue her statements lacked indicia of credibility. Again, he merely argued Jada had testified and the third party testimony was repetitive.

¶39. To be sure, under Rule 803(25) "[a] statement by a child of tender years describing any act of sexual contact with or by another is admissible if: (A) the court—after a hearing outside the jury's presence—determines that the statement's time, content, and circumstances provide substantial indicia of reliability; and (B) the child either: (i) testifies; or (ii) is unavailable as a witness, and other evidence corroborates the act." *See also **Veasley v. State***, 735 So. 2d 432, 437 (Miss. 1999) (requiring a case-by-case, on-the-record determination that the child is of tender years and that Rule 803(25)'s factors apply before admitting the testimony).[5] While the trial court here did not conduct the required hearing before admitting Jada's statements to third parties, the circumstances of this evidence's admission is the same as in **Redmond**.

¶40. In that case, just like this one, the defendant "did not object based on the court's failure to state on the record that [the victim] was a child of tender years or that the testimony failed to show substantial indicia of reliability, arguments that he now asserts for the first

---

[5] There is rebuttable presumption that a child under the age of twelve when he or she reported the sex abuse is of tender years. **Veasley**, 735 So. 2d at 437. The record shows Jada made these statements soon after her twelfth birthday.

time on appeal." ***Redmond***, 66 So. 3d at 110. Instead, Redmond, like Allen, objected because the child victim was available to testify. ***Id.*** But because Redmond could not "expand his objection at trial to encompass other claims for the first time on appeal[,]" this Court unanimously found Redmond's argument that no tender-years hearing was conducted was procedurally barred. ***Id.*** (quoting ***Gray v. State***, 728 So. 2d 36, 70-71 (Miss. 1998), *overruled on other grounds by **Franklin v. State***, 170 So. 3d 481, 487 (Miss. 2015)).

¶41. We find the same waiver principle applies here. Allen cannot now expand his "best evidence" trial objection to widen the net and now argue error based on the judge's not holding a tender-years hearing. This was not his stated reason for challenging the third party testimony, so like the defendant in ***Redmond***, Allen has waived any challenge under Rule 803(25). ***Id.***

### V. *Batson* Objection

¶42. Finally, Allen argues the trial judge erred by denying his ***Batson*** objection based on the State's exercise of its peremptory challenges. ***Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). But this Court will only reverse a ***Batson*** finding upon clear error. ***Strickland v. State***, 980 So. 2d 908, 915-16 (Miss. 2008) (quoting ***Smith v. State***, 835 So. 2d 927, 940 (Miss. 2002)). And Allen has not shown clear error.

¶43. In fact, Allen has not provided any facts or circumstances by which to evaluate the trial court's ***Batson*** decision beyond the State's exercise of five of its six peremptory strikes on African Americans. We have no other information about the racial makeup of the venire or empaneled jury. But we do know the trial court asked Allen's counsel if the State had

"accept[ed] any African Americans." And Allen's counsel conceded the State had. Still, again we do not know if at that point the State had accepted one or multiple African-American jurors.

¶44. This Court has been clear that "exercising . . . peremptory strikes against African-Americans, *standing alone*, absent any other facts or circumstances . . . fails to establish 'a prima facie showing that race was the criteria for the exercise of the peremptory challenge.'" *Id.* at 917 (emphasis added) (quoting *Carter v. State*, 799 So. 2d 40, 46 (Miss. 2001)). These facts and circumstances include the "racial composition of the venire, empaneled jury, or community," and "other non-exclusive factors such as . . . the prosecutor's conduct, . . . the habitual policies of these prosecutors, . . . the stated policies of the district attorney's office, . . . and the nature of the case itself . . . ." *Id.* Here, the record is devoid of any facts concerning these factors or circumstances. We have no idea about the racial makeup of the Yazoo County venire, the empaneled jury, or the community. This is because Allen's counsel made no attempt to show the strikes were disproportional to the venire or accepted jurors. Nor did he attempt to show there were other facts and circumstances indicating the State's peremptory strikes were racially motivated. Instead, when asked, Allen's counsel conceded the State had accepted African-American jurors. And then he simply moved on and exercised the defense's peremptory strikes.

¶45. This Court accords "great deference" to a trial judge's finding that a party failed to establish a prima facie case of racial discrimination. *Id.* at 915 (citing *Smith*, 835 So. 2d at 940). This means "[a] reversal will only occur if the factual findings of the trial judge appear

16

to be '*clearly erroneous or against the overwhelming weight of the evidence.*'" *Id.* (alteration in original) (quoting *Smith*, 835 So. 2d at 940). This "deferential standard of review reflects 'confidence that trial judges experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.'" *Id.* (quoting *Batson*, 476 U.S. at 97).

¶46. Because Allen neither made a record nor provided any evidence supporting his *Batson* objection, this Court cannot say the trial judge clearly erred by allowing the State's strikes to stand.

**Conclusion**

¶47. After a thorough review of Allen's appellate arguments and the record, we find no reversible error. Therefore, we reverse the judgment of the Court of Appeals, which reversed and remanded Allen's judgment of conviction. We reinstate and affirm the judgment of the Circuit Court of Yazoo County.

¶48. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY IS REINSTATED AND AFFIRMED.**

 **RANDOLPH, C.J., CHAMBERLIN, ISHEE, GRIFFIS AND BRANNING, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY COLEMAN, P.J., AND SULLIVAN, J. COLEMAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, J.**

 **KING, PRESIDING JUSTICE, DISSENTING:**

¶49. We should dismiss this certiorari proceeding as improvidently granted, as I can find no significant fault with the unanimous Court of Appeals opinion, nor any other compelling

reason for this Court to decide this case. Further, on the merits, the invited-error doctrine does not apply to this case. Consequently, I respectfully dissent.

### 1. *Certiorari*

¶50. Mississippi Rule of Appellate Procedure 17(a) provides standards for when this Court should review a decision of the Court of Appeals. M.R.A.P. 17(a). A grant of certiorari is "ordinarily . . . only for the purpose of resolving substantial questions of law of general significance." M.R.A.P. 17(a). Further, review is ordinarily limited to cases in which the Court of Appeals' decision is in conflict with precedent or fails to consider a controlling constitutional provision. M.R.A.P. 17(a)(1)-(2). This case does not meet these criteria. A unanimous Court of Appeals correctly analyzed the issue under our existing precedent. And I can ascertain no general significance to this issue, unless the majority expects that the State will regularly shirk its duty to submit elements instructions, and instead generally fail to submit them or submit them for the entirely wrong crime. I, however, believe this to be a somewhat isolated oversight on the State's part, not an issue that will be generally significant. Thus, we should dismiss this certiorari proceeding and allow the opinion of the Court of Appeals to stand.

### 2. *Invited Error*

¶51. For a criminal defendant's right to a jury trial under the Mississippi Constitution to be fulfilled, the jury must be properly instructed on every element of the crime. *Harrell v. State*, 134 So. 3d 266, 270-75 (Miss. 2014). The responsibility for properly instructing a jury on all elements of a crime lies with the State and, ultimately, the trial court. *Id.* at 270.

18

> It is the trial court's responsibility to assure that the jury is "fully and properly instructed on all issues of law relevant to the case." ***Kolberg v. State***, 829 So. 2d 29, 46 (Miss. 2002). "There is no doubt that the trial court is ultimately responsible for rendering proper guidance to the jury via appropriately given jury instructions, even sua sponte." ***Id.*** at 45. We also have held that the State is responsible for making sure the jury is instructed on the essential elements of the crime. ***Hunter v. State***, 684 So. 2d 625, 635 (Miss. 1996) (stating that "[i]t is rudimentary that the jury must be instructed regarding the elements of the crime with which the defendant is charged . . . even though the defendant did not present an acceptable instruction, the State was obligated to do so").

***Id.*** (alteration in original). Nothing in our caselaw shifts the burden to properly instruct the jury on every element of the crime to the defendant when the State utterly fails in its duty. When the State completely fails to complete its required burden, and the trial court fails as well, it would be nearly impossible to find invited error when the defendant is essentially forced to use his instruction, an instruction that the State unequivocally accepts. In this case, the State did not meet its burden to properly instruct the jury on the crime of statutory rape; indeed, the State did not even bother to attempt to instruct the jury on statutory rape. The State admits that it submitted an elements jury instruction only on the completely wrong crime. Nor did the trial court attempt to properly instruct the jury on statutory rape. The State and the trial court both accepted Allen's instruction without correction. And these failures are the first reason that the ***Thomas*** case relied upon by the majority is distinguishable.

¶52.   In ***Thomas***, the State submitted proper jury instructions setting forth the elements of capital murder and the underlying crime of robbery. ***Thomas v. State***, 249 So. 3d 331, 347-50 (Miss. 2018). Thomas's counsel vociferously and, as the record laid bare, with clear knowledge of the consequences, objected to instructing the jury as to the elements of the

19

underlying crime of robbery. *Id.* Thomas then argued on appeal that it was error not to instruct the jury as to the elements of robbery. *Id.* In finding invited error, the Court emphasized that "the State met its burden to instruct the jury by submitting proper instructions as to both the elements of capital murder and the underlying crime of robbery." *Id.* at 349. It further stressed that "[a] reversal is not required where the trial court and the State both acted to properly instruct the jury, but the defendant—in a tactical decision—objected to the instruction." *Id.* In Allen's case, conversely, neither the State nor the trial court even attempted to properly instruct the jury. The State submitted an instruction for the *wrong crime* and both the State and the trial court simply accepted Allen's elements instructions without discussion regarding missing elements. The State and trial court in this case clearly failed to meet their burdens to properly instruct the jury.

¶53. The second reason that this case is distinguishable from *Thomas* is that no record evidence exists to indicate that this decision was intentional or strategic on the part of Allen. In *Thomas*, his attorney vociferously advocated for the removal of the robbery elements instruction, several times, citing his reasoning. *Id.* at 348 (quoting the record and noting that "[t]he record demonstrates that defense counsel's successful objection to Instruction S-3 was a tactical decision"). Indeed, the Court characterized defense counsel as having "demanded" the robbery instruction be removed. *Id.* (internal quotation marks omitted). The Court ultimately held that "[a] defendant cannot object to an elements instruction, succeed on the objection, use that success to minimize the issue to a jury, bolster his own credibility with the success of the objection, and then cry error . . . ." *Id.* at 349-50. The record bears out none

of that in Allen's case. And the majority concedes that nothing indicating counsel's motives is in the record. Maj. Op. ¶ 25-26. Indeed, the State itself argued in its brief that the record is not developed with regard to defense counsel's trial strategy. And the only reason Allen's instruction was used in the first place was because the State failed wholesale to submit an elements instruction for the charged crime. Allen did *not* advocate for his instruction to be used over another proper instruction; rather, the record clearly indicates that his instruction was used merely by default. ***Thomas*** distinguishes cases in which the actions of defense counsel were "inadvertent, negligent, or without strategic or tactical grounds." ***Id.*** at 347 (citing ***People v. Bender***, 169 N.E.2d 328, 333 (Ill. 1960); ***State v. Dozier***, 255 S.E.2d 552, 555 (W. Va. 1979)). Nothing in the record indicates that the State or the trial court met their burdens to properly instruct the jury as to all the elements by submitting a proper instruction or attempting to correct the only elements instruction offered on the actual crime charged. The burden to properly instruct the jury did not transfer to the defendant because of the State's complete failings; indeed, the defendant was essentially forced to use his instruction due to the State's failure of its duty, and the State, further shirking its unequivocal, nontransferable duty, accepted the faulty instruction without correction, when correcting the instruction would have helped the State fulfill its duty to make sure the jury was properly instructed on every element of the crime. Equally, if not more, plausible given the record is that the omission of elements in the instruction was inadvertent or negligent. And the State's utter failures essentially forcing the defendant's hand lead to the conclusion that invited error cannot occur in this case. This is consequently not an appropriate case in which to apply the

21

invited error doctrine, and I would allow the unanimous Court of Appeals decision to stand.[6]

### 3.    *Batson*[7]

¶54.    While I agree with the ultimate outcome reached by the majority on the *Batson* issue, I write to express serious concern regarding its analysis.  The State used all but one of its strikes on Black jurors and the judge specifically stated that simply because the State had accepted at least one Black juror, *Batson* was inapplicable, stating that *Batson* "doesn't arise on that."  The trial court relied on the incorrect notion that accepting at least one Black juror negated any *Batson* challenge at the outset.  That is simply not the law.  The majority's discussion about providing "great deference" to a trial judge's findings regarding a prima facie case is confusing, because its discussion implies that the trial court, which applied a completely incorrect legal standard, is owed deference for such.  Maj. Op. ¶ 45.  However, when remanding for a *Batson* hearing because of failure to conduct a proper analysis, the trial court is limited to the record as it stood at the time, and the majority is correct that Allen has not provided any record evidence of the racial makeup of the jury venire, the racial makeup of the empaneled jury, or other factors that would indicate that the strikes were race-based and a prima facie showing of discrimination could be made.  Allen simply has not made enough of a record to indicate that enough evidence exists to enable an analysis worthy of conducting.

¶55.    For these reasons, I believe that we should dismiss certiorari review of this case.  If

---

[6]The Court of Appeals also found problematic that the instructions did not adequately address venue or the burden of proof.  I agree.

[7]*Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

the case is addressed on the merits, I would hold that the invited error doctrine is inapplicable based on the record before us. I therefore respectfully dissent.

**COLEMAN, P.J., AND SULLIVAN J., JOIN THIS OPINION IN PART.**

**COLEMAN, PRESIDING JUSTICE, DISSENTING:**

**I.      Invited-Error**

¶56.    The instant case is indistinguishable from *Hunter v. State*, 684 So. 2d 625, 636 (Miss. 1996), *abrogated by* *Kolberg v. State*, 829 So. 2d 29 (Miss. 2002), *overruled on other grounds by* *Rowsey v. State*, 188 So. 3d 486, 494 (Miss. 2015). There, we held that the State must present adequate elements instructions for the jury when the defendant fails to do so. *Id.* at 636 ("Therefore, even though the defendant did not present an acceptable instruction, the State was obligated to do so.").

¶57.    On the other hand, today's case is easily distinguishable from *Thomas v. State*, 249 So. 3d 331 (Miss. 2018). There, we held that the record showed the defendant's objection to the element instruction was "a tactical decision." *Id.* at 348 (¶ 60). Regarding defense counsel's objection to the instruction that included the elements of robbery, we wrote:

> He acted with full knowledge of the consequences. He did not want the jury instructed on the elements of robbery. He felt that the instruction would be confusing to the jurors, misleading them into believing the defendant was charged with a second count. The tactical decision, whether wise or not, is further brought home in defense counsel's closing argument in which he stated the defendant had admitted that he had committed the crime of robbery and used it to support the defendant's credibility on the capital-murder issue in which he argued that "The State can't pick and choose what they want you to believe."

*Id.* As the *Thomas* Court wrote, defendants may waive "their constitutional rights if they do

so knowingly and voluntarily." *Id.* (¶ 61). The actions of defense counsel in *Thomas*, *i.e.*, directly rejecting the correct elements instruction offered by the State, amounted to a waiver of the elements instruction.

¶58.   The same cannot be said of the case before us today. Here, the incomplete elements instructions were provided by the defendant after the State submitted instructions for the wrong crime. "We absolutely and without reservation agree with this legal tenet" that "it is the trial court's responsibility to assure that the jury is 'fully and properly instructed on all issues relevant to the case.'" *Id.* at 349 (¶ 63) (internal quotation marks omitted) (quoting *Harrell v. State*, 134 So. 3d 266, 270 (¶ 14) (Miss. 2014)). The duty of supplying proper instructions belongs to the State as well. *Id.* (¶ 64) (noting that the State met its burden by providing proper jury elements instructions); *Hunter*, 684 So. 2d at 636 ("Therefore, even though the defendant did not present an acceptable instruction, the State was obligated to do so.") At the outset, today's case is instantly distinguishable from *Thomas* in that, here, the State never met its duty. Of course, as more fully set out below, today, the majority relieves the State of that long-held duty.

¶59.   The *Thomas* Court wrote: "It is important to note what this case is not. This is not a case in which the defendant successfully objected to the language of an elements instruction and the court neglected to correct the error or substitute language." *Thomas*, 249 So. 3d at 347-48 (¶ 58). The instant case falls squarely into the category that *Thomas* was not. In *Thomas*, the State met its duty to seek correct instruction of the jury, but the defendant explicitly rejected the correct instruction. In today's case, the State never fulfilled

its duty to see that the jury was properly instructed. "Therefore, even though the defendant did not present an acceptable instruction, the State was obligated to do so. Reversal on this issue is warranted." *Hunter*, 684 So. 2d at 636 (citing *Henderson v. State*, 660 So. 2d 220, 222 (Miss. 1995); *Neal v. State*, 451 So. 2d 743, 757 n.9 (Miss. 1984); *Watson v. State*, 465 So. 2d 1025, 1031 (Miss. 1985)).

¶60.    In *Thomas*, defense counsel expressly objected to the correct instruction, thereby waiving his client's right to have a jury decide Thomas's guilt on that element. *Thomas*, 249 So. 3d at 344-50 (¶ 65).  As the Court wrote, *Thomas* was a case "in which the error might more appropriately be referred to as 'demanded' by the defendant rather than 'invited.'" *Id.* at 348 (¶ 58).  The waiver of the right to a jury trial must be made either in writing or in open court.  Miss. R. Crim. P. 18.1(b).  The waiver must be knowing, voluntary, and intelligent. Miss. R. Crim. P. 18.1(b)(1).  The waiver of the right to have a jury determine guilt cannot be presumed from a silent record.  *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).  In *Thomas*, the defendant's pointed and repeated objection to the elements instruction sufficed to show waiver, but the record here lacks such clarity and can provide a basis for no more than conjecture as to the motivation, if any, for the omission of the instruction. *Thomas*, 249 So. 3d at 348-49 (¶¶ 60-61).  In the absence of adequate evidence of waiver, Allen's right to have a jury find his guilt—even of such a heinous crime as the one with which he is charged—stands.

¶61.    The facts of the instant case are not meaningfully distinguishable from the facts in *Hunter*.  There, the defendant stood trial for capital murder with the underlying felony of

robbery. *Hunter*, 684 So. 2d at 628. The trial court, in a decision affirmed by the *Hunter* Court on appeal, rejected the defendant's instruction on the elements of robbery as incorrect and confusing. *Id.* at 634. After the trial court refused the defendant's proposed instruction, no proper instruction addressing the elements of robbery was offered by the State or the trial court to take the place of the rejected defense instruction. *Id.* at 635.

¶62. The *Hunter* Court squarely rejected the argument that "it is incumbent on the defendant to offer" a correct elements instruction, and it rejected the State's argument and cited authority to that effect. *Hunter*, 684 So. 2d at 635. Although *Hunter* did not address invited error, the State's attempted disavowal of its duty to see the jury properly instructed is at the heart of its invited error argument here as it was at the heart of its argument in *Hunter*. Accordingly, *Hunter* stands squarely against the majority's holding today that, in the face of a flawed jury instruction offered by the defendant, the State has no duty to ensure the jury is properly instructed. "[T]he State also has to ensure that the jury is properly instructed with regard to the elements of the crime." *Id.* at 635. It is impossible to square today's holding with *Hunter*. In both cases, the defendant offered flawed jury instructions. In both cases the State argued that providing correct instructions was the defendant's responsibility, and the failure of the defendant to fulfill that responsibility warrants affirming the conviction. In *Hunter*, the Court rejected that argument, but today the majority accepts it. *Vaughn v. State*, 143 Miss. 722, 109 So. 727 (1926), does not change the result because the jury instruction at issue in *Vaughn* was not an elements instruction.

¶63. It is difficult, if not impossible, to imagine a set of facts that lends itself to the

26

decades-old holdings from the Court that place the duty on the State and trial court to see that the court fully instructs the jury as to the elements of a crime more than the case before us here. Today's case at best confuses the law. To be frank, had all nine members of the Court not recently reaffirmed those duties in **Thomas**, one could easily draw the conclusion that the majority today overrules the cases that acknowledge them. **Thomas**, 249 So. 3d at 349 (¶¶ 63-64); *see also id.* at 350-51 (¶ 71) (Kitchens, P.J., dissenting).

¶64. The majority contends that the inclusion of the age-gap instruction would not have made a difference in the jury's deliberations because the fact of the age gap was not contested. Maj. Op. ¶ 28.

> It is axiomatic that *a jury's verdict may not stand upon uncontradicted fact alone*. The fact *must be found via jury instructions* correctly identifying the elements of the offense under the proper standards. This is the essence of criminal justice under law. There is no directed verdict of guilt in criminal cases.

**Turner v. State**, 573 So. 2d 1340, 1343 (Miss. 1990) (citations omitted) (emphasis added). That the age gap between Allen and his victim was uncontested is not enough. The verdict of guilty must result from facts found "via jury instructions[.]" **Id.**; *see also* **Harrell**, 134 So. 3d at 273 (¶ 25) ("[A]ppellate courts may use harmless error to preserve, *but not supplement*, a jury's findings.").

¶65. Before closing, it is worth pointing out that, in the past, we have been reticent to apply the invited error doctrine to "a basic constitutional right." **Livingston v. State**, 525 So. 2d 1300, 1306 (Miss. 1988) (quoting **West v. State**, 485 So. 2d 681, 688 (Miss. 1985)), *overruled on other grounds by* **Wright v. State**, 958 So. 2d 158, 166 (¶ 21) (Miss. 2007). In

*Livingston*, the basic constitutional right in question was the right against self-incrimination, but one would think that the right to a jury of one's peers qualifies as a basic right as well.

¶66.    While the phrase "invited error" does not appear in *Hunter*, the invited error argument as the majority frames it today is functionally no different than the State's contention in *Hunter* that it had no duty to submit correct instructions in the face of the flawed instructions offered by the defendant. *Hunter*, 684 So. 2d at 635.  The Court should look beyond the mere use of a phrase and consider the argument advanced by it.  Here, that argument is no different than the State's argument rejected by the *Hunter* Court.

¶67.    The phrase "invited error" as the majority uses it was unknown in our cases prior to the 1996 *Hunter* decision.  The phrase first appears in Justice Robertson's separate opinion in *Hill v. State*, 432 So. 2d 427, 451 (Miss. 1983) (Robertson, J., specially concurring). Justice Lee also used it in a dissent in *Caldwell v. State*, 443 So. 2d 806, 816-17 (Miss. 1983) (Lee, J., dissenting), *rev'd and remanded*, 472 U.S. 320, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985), *sentence aff'd*, 481 So. 2d 850 (Miss. 1985), *vacated and remanded*, 479 U.S. 1075, 107 S. Ct. 1269, 94 L. Ed. 2d 130 (1987), *sentence aff'd*, 517 So. 2d 1360 (Miss. 1987).  The first instance of the phrase in a Mississippi Supreme Court majority opinion can be found in *West*, where the majority *refused* to apply it to the constitutional guarantee of the right to remain silent.  *West*, 485 So. 2d at 687-89.  The court again used the phrase but refused to accept the argument as to the question of an improper comment on the defendant's refusal to testify in *Stringer v. State*, 500 So. 2d 928, 940 (Miss. 1986).  The first use of the phrase to reject a defense argument in a Mississippi Supreme Court majority opinion appeared in

28

*Weaver v. State*, 497 So. 2d 1089, 1093 (Miss. 1986). There, the Court mentioned it briefly as an alternative argument affirming a decision regarding the admissibility of evidence of insurance coverage. *Id.* The Court again used the phrase in *Booker v. State*, 511 So. 2d 1329, 1332 (Miss. 1987), when it found that a prosecutor's comments regarding the defendant's access to an appeal were invited by comments made by defense counsel that touched on the issue of appeal. In *Williams v. State*, 544 So. 2d 782, 796-99 (Miss. 1987), the Court held that the prosecutor's improper comments on parole eligibility were not invited by defense counsel. Finally, in *Livingston v. State*, 525 So. 2d 1300, 1306-07 (Miss. 1988), the last opinion in a criminal case prior to *Hunter* to use the phrase "invited error," the Court quoted *West* and its statement disfavoring the application of the argument to constitutional rights.

¶68. In the above-listed cases, markedly unlike today's case, the error being invited (or not) was error on the part of the prosecution the State then argued was committed in response to some comment or action by the defendant's attorney. The *Williams* Court made it clear that invited error was synonymous with the concept of "opening the door." *Williams*, 544 So. 2d at 797. As such, they do not address the situation before the Court here: the majority uses a completely different form of invited error wherein the defendant made the error in question, and the majority affirms on the ground that the defendant got what he wanted.

¶69. Readers of today's majority will recognize, even if the majority does not say it outright, that the Court overrules the holding of *Hunter* that the State may not simply sit idly by in the face of improper or incomplete elements instructions from the defendant. As

29

pointed out above, we have held that undisputed facts are not enough to support a conviction without the proper jury instruction, but today's holding will not apply only in cases when the facts are undisputed as to a given element. Going forward, even when the facts of a criminal charge are hotly contested, the State may sit back and wait for the defendant's jury instructions. If those instructions are flawed but favor the State, then the State may agree to them and, on appeal, simply argue invited error, *i.e.*, that the State has no duty to correct them because the defendant got what the defendant wanted.

¶70. The ***Hunter*** Court directly addressed and rejected the argument embraced by the majority today, and we recently reaffirmed ***Hunter***'s rejection in ***Thomas***. ***Thomas***, 249 So. 3d at 349 (¶ 64) ("[T]he *State met its burden to instruct the jury by submitting proper instructions* as to both the elements of capital murder and the underlying crime of robbery."). The duty of the State to see the jury properly instructed flows from its unmistakable duty to prove each element of the offense.

> This Court holds that the State had a duty to ensure that the jury was properly instructed on the elements of the underlying crime.
>
>> It is hornbook criminal law that before a conviction may stand the State must prove each element of the offense. Not only is this a requirement of the law of this State, due process requires that the State prove each element of the offense beyond a reasonable doubt.
>
> ***Neal v. State***, 451 So. 2d 743, 757 (Miss. 1984). A logical corollary of this principle is that, because the State has to prove each element of the crime beyond a reasonable doubt, *then the State also has to ensure that the jury is properly instructed with regard to the elements of the crime. See also **Hosford v. State***, 525 So. 2d 789, 792 (Miss. 1988) (quoting ***Adams v. State***, 202 Miss. 68, 75, 30 So. 2d 593 (Miss. 1947) ("In conducting a criminal case, the prosecuting attorney must be fair and impartial, *and see that defendant is not*

30

*deprived of any constitutional or statutory right*.") (emphasis in original).

*Hunter*, 684 So. 2d at 635 (first emphasis added). Yet, here we are. Today, the majority accepts the argument that the State had no duty to properly instruct the jury, may indeed sit on its hands in the face of flawed jury instructions submitted by the defense (as happened in *Thomas*), and argue with success on appeal what *Hunter* directly rejected, *i.e.*, that is was "incumbent on the defendant to offer" the elements instruction. *Hunter*, 684 So. 2d at 635.

¶71. "In conducting a criminal case, the prosecuting attorney must be fair and impartial, *and see that defendant is not deprived of any constitutional or statutory right.*" *Hosford v. State*, 525 So. 2d 789, 792 (Miss. 1988) (internal quotation marks omitted) (quoting *Adams v. State*, 202 Miss. 68, 30 So. 2d 593, 596 (1947)). Except, after today, the quoted maxim no longer applies to the constitutional right to have a jury determine guilt via complete jury instructions as to the elements of the charged crime.

¶72. Pursuant to the foregoing, I, with respect, dissent.

**SULLIVAN, J., JOINS THIS OPINION.**